TALIAFERRO v. EVANS et al., Appellants.

Division Two, February 26, 1901.

1. **New Trial: DISCRETION OF TRIAL COURT.** The granting of a new trial rests peculiarly within the discretion of the trial court, and to reverse its ruling in sustaining a motion therefor it devolves upon the appellant to show that he has been prejudiced thereby.

2. **Fraudulent Conveyance: ADMISSION OF INSOLVENCY.** The admissions and statements of the grantor in a deed to his wife, to the effect that he was rendered insolvent by such deed, are competent evidence to show his insolvency, although made after the execution of such deed.

3. ———: **INSOLVENCY.** The grantor's insolvency may be an important factor in showing the fraudulent character of a deed by him to his wife. If he had sufficient property left to pay his debts after

making such conveyance, it could not be assailed on the ground of fraud. On the other hand, if the deed rendered him insolvent, and it was voluntary and without consideration, it was fraudulent as to his creditors; or, if it was supported by a valuable consideration, but was made with a fraudulent intent to put the property beyond the reach of his creditors, and his wife knew and participated in such purpose, it was fraudulent and invalid as to them.

4. **Appellate Practice:** EQUITY CASES. In all suits in equity where the witnesses testify orally, the appellate court defers somewhat to the findings of the trial court.

Appeal from Ralls Circuit Court.—*Hon. R. F. Roy,* Judge.

AFFIRMED.

*George W. Whitecotton* and *William Christian* for appellants.

(1) The evidence shows that Dudley Butler wished to give his daughter, Catharine Evans, 40 acres of land, and that at the same time he refused to deed it to her husband, Thomas W. Evans. Dudley Butler afterwards sold this land and gave the money received for it to his said daughter, and the evidence shows that though Thomas W. Evans, her husband, was permitted to use it in making the purchase of the land, yet he always regarded it as his wife's money and acknowledged it to be hers. Under the proof this fund remained hers. Bishop on the Law of Married Women, sec. 122; Terry, Trustee, etc., v. Wilson, 63 Mo. 493 (see pages 498, 499.) Botts v. Cooch, 97 Mo. 88; Clark v. Clark, 86 Mo. 116; White v. Clusby, 101 Mo. 167; McCoy v. Heyatt, 80 Mo. 130; Holtheus v. Horenbostle, 60 Mo. 430; Roberts v. Walker, 101 Mo. 601; Welch's Admr., v. Welch, 63 Mo. 57. (2) When this land was sold to Alexander Allison, Catharine Evans received as the result of her investment of her $200 received from her father, in the land sold to Allison,

the negro girl Bettie at a consideration of $600. Now even if the husband's dealings with the money received as the proceeds of the sale of the land given by her father amounted to a reduction of the same to his possession, yet this fact "did not prevent the husband from making restitution to the wife, indeed it furnished a moral consideration for the volunteer gift of the negro girl, out of which all her rights are claimed." Scrutchfield v. Sauter, 119 Mo. 625. (3) This land, it appears from the evidence, was never shown by the public records to be the land of Thomas W. Evans; he has no record title to it; hence it can not be said that his wife permitted him to obtain credit by allowing the title to stand in his name. It did not so stand. If it had so stood, yet he had recognized her as his creditor from the time the girl was used as part of the purchase price of the land, and in evidence of his recognition of the debt and of his intention not to reduce the same to his possession, he executed and delivered to her his note for the amount, as shown by the evidence. It is held that it is no objection to the validity of a conveyance by a debtor to his creditor, that it operates to hinder and delay other creditors; that it was made with the intent on the part of the debtor that it should so operate, and that the creditor receiving it was aware of the intent, provided he received it with the honest purpose of securing his debt. Shelley v. Boothe, 73 Mo. 74; Hard v. Foster, 98 Mo. 274; Sexton v. Anderson, 95 Mo. 373. (4) The defense of the statute of limitation is a personal privilege and no one can compel a creditor to take advantage of it if he chooses not to avail himself of it. 13 American and Eng. Ency. of Law (1 Ed.), p. 706. A husband can pay *bona fide* debts to his wife however stale and ancient, and his creditors can not compel him to resort to the statute of limitation. 13 Am. and Eng. Ency. of Law, p. 707; Kennedy v. Powell, 34 Kan. 23; Brookville Nat. Bank v. Kimble, 76 Ind. 203.

*J. O. Allison* and *J. D. Hostetter* for respondent.

(1) This is an appeal from the order of the trial court sustaining a motion for a new trial, and one of the grounds in said motion is that the finding was "against the weight of the evidence." In such case the appellate court will not attempt to interfere with the discretion of the trial court, in passing on the weight of the evidence, as that has ever been regarded as the peculiar and exclusive province of the trial court. Kuenzel v. Nicholson, 56 S. W. (Mo.), 1076; Haven v. Railroad, 55 S. W. (Mo.), 1035; Bank v. Wood, 124 Mo. 72; Baughman v. Fulton, 41 S. W. (Mo.), 215. On appeal from an order sustaining a motion for a new trial the judg-. ment of the lower court will be affirmed if any one of the grounds contained in said motion be held good. Thiele v. Railroad, 140 Mo. 335; Jeggler v. Roeder, 79 Mo. App. 434. True, this is a suit in equity and the appellate courts may review the evidence, but subject to the well-known and often-iterated rule that much deference will be shown to the conclusion of the trial court on the evidence. Glasgow Milling Co. v. Burns, 144 Mo. 196. (2) Where a wife permits the husband to have unlimited control of her property, and invest and hold it in his own name for a series of years, she will not be permitted, after third parties relying upon his ownership of the same, in good faith gave the husband credit, to withdraw such property from their just claims and she is estopped and postponed as to such creditors. Riley v. Vaughn, 116 Mo. 169; Besson v. Eveland, 26 N. J. Eq. 471; Humes v. Scruggs, 94 U. S. 23; Bank v. Hamilton, 34 N. J. Eq. 162; McClain v. Abshire, 63 Mo. App. 333; Leete v. Bank, 115 Mo. 204; Gentry v. Field, 143 Mo. 413; Jamison v. Bagot, 106 Mo. 240. (3) Prior to the taking effect of the Act of 1875 in relation to married women in this State, the status of

the husband towards the wife was as at common law, and he acquired, *jure mariti,* the title to all her personal property in possession. Garrett v. Wagner, 125 Mo. 450; Benne v. Schnecko, 100 Mo. 256; Woodford v. Stephens, 51 Mo. 443; Alexander v. Lydick, 80 Mo. 341; Modrell v. Riddle, 82 Mo. 31; Wood v. Simmons, 20 Mo. 363; Walker v. Walker, 25 Mo. 367; Leakys' Admr., v. Maupin, 10 Mo. 372; Sallee v. Arnold, 32 Mo. 532; Coughlin v. Ryan, 43 Mo. 99; Weil v. Simmons, 66 Mo. l. c. 620. (4) The effect of a promissory note given by the husband to the wife, under the law as it existed in this State prior to the Married Woman's enactment of 1875, which note was given for property of the wife in which she had no separate estate, and which property the husband had used, has been ably discussed and the conclusion announced that it is a nullity and does not make the wife his creditor. Terry, Trustee, v. Wilson, 63 Mo. 499; Sloan v. Torrey, 78 Mo. 627.

BURGESS, J.—This is an appeal by defendants from an order of the circuit court, setting aside its judgment, which was in favor of defendants, and granting plaintiff a new trial.

The purpose of the action is to have set aside, as fraudulent, a certain conveyance of two hundred acres of land in Ralls county, Missouri, of the alleged value of five thousand dollars, made by the defendant, Thomas W. Evans, to his wife Catharine Evans, dated March 2, 1894, and to subject the same to the payment of certain judgments, amounting in the aggregate to about three thousand dollars, which were rendered in favor of plaintiff and against the said Thomas W. Evans by the circuit court of said county on the twenty-first day of March, 1895.

The debts embraced in the judgments were contracted at different times from September 17, 1889, to March 19,

1892, and were for money loaned by plaintiff to the sons and son-in-law of defendants, for the payment of which the defendant, Thomas W. Evans, was surety. The borrowers were all insolvent at the times the money was loaned and have been ever since, and the loans were made upon the credit of Thomas W. Evans, he being then the apparent owner of two hundred and ten acres of land in Ralls county of the value of about $5,000. Plaintiff testified that when said Evans came with one of his sons to procure one of the loans, he assured him that his land was unincumbered, that he was perfectly good and did not owe anything and that plaintiff was taking no chances in loaning the money to them.

By the transfer of the two hundred acres of land Thomas W. Evans was rendered insolvent, and the petition alleges that the land was conveyed by him to his wife for the purpose of defrauding his creditors, particularly the plaintiff, and that she had knowledge of such fraudulent design, and participated therein, and that said conveyance was without consideration and voluntary.

Defendants answered separately. Catharine Evans in her separate answer admitted the execution of the deed of date March 2, 1894, by her husband, conveying to her the 200 acres in controversy, but averred that the same was based on a $4,000 consideration. She further alleged in her answer that she owned a slave named "Bettie" in 1860, and that the 200-acre tract in controversy was purchased by her husband from Wm. Ely and Alexander Allison, and that her slave was taken by Ely at $1,000 in part payment of the purchase price, and that her husband gave her his note for $1,000, bearing ten per cent compound interest, as a consideration for said slave so used by him in the part payment of the purchase price of said land, and that said note contained a stipulation that it should be paid in land. She also averred that her husband

Vol. 160 mo—25

promised in 1865 to convey or cause to be conveyed to her the land in controversy, in settlement of said note, but that by a mistake of the scrivener, the executors of Alexander Allison, deceased (who held the legal title to the land at the time of his death), conveyed the same by an erroneous description to her husband, instead of to her.

She further averred that plaintiff's judgment debts were security debts, and that she had no knowledge of said indebtedness from her husband to plaintiff until about March 2, 1894, the date of the deed under attack. She further averred that she and her husband had been in possession of the land from the date of the purchase in 1860 to the present time, and that in 1889 and 1890, she had spent about $800 in improving the houses, fences, etc.

Thomas W. Evans in his separate answer admits the recovery of the judgment for debt as alleged, and the execution of the deed to his wife, and avers the truth of the statements in the separate answer of his wife, and that he is the head of a family and said land is his homestead and has been ever since its purchase in 1860.

The reply to the separate answer was a general denial of new matter therein contained and a plea of the statute of limitation to said note.

The evidence shows that Thomas W. Evans acquired title to 215 acres, which includes the 200 acres in controversy, by deeds dated in 1866, which were placed on record at that time. It is also in evidence that defendant, Catharine Evans, knew at the time that the title had been placed in her husband.

While the description contained in the deeds made in 1866 by which Thomas W. Evans acquired title, varies from the description contained in the deed to his wife made March. 2, 1894, yet it is not shown by the evidence which description is the correct one, and it is undisputed that the land intended

to be conveyed by the deeds made to Thomas W. Evans in 1866, and the deed made by him to his wife in 1894, was the same tract, the farm on which they lived.

While defendant Catharine Evans sets up in her answer that she had no knowledge that her husband was indebted to the plaintiff, until about March, 1894, when she procured the deed to be made to her, yet the evidence clearly shows that she knew at the time the money was being borrowed, of the fact that her husband was signing her sons' and son-in-law's notes, as surety to plaintiff, but she claims that she thought her boys were able to pay the notes off. She met plaintiff in Vandalia, where he lives, in 1892, and on being introduced to him remarked interrogatively: "Is this the gentleman we owe all this money to?" The plaintiff sought to prove by his own testimony that all the makers of the notes, held by him, except Thomas W. Evans, were insolvent at the time the various amounts were borrowed from him and that he knew of their insolvency and of Thomas W. Evans's solvency, and loaned the amounts on the latter's credit alone, but upon objection being made by defendants the court excluded such proffered testimony.

The $1,000 note, after being exhibited in court, was lost. It was, however, in the possession of Thomas W. Evans when he took it to an attorney to ascertain whether "it was any account or not," shortly prior to the making of the deed to his wife. The slave "Bettie" was sold to Wm. Ely, but the evidence shows that Alexander Allison sold the 215 acres (which includes the 200 acres in controversy) to defendant Thomas W. Evans, as his executors, Charles Rice and Dudley Butler, conveyed said land to said Thomas W. Evans by deeds executed in 1866 after the death of Alexander Allison, and in one of the deeds conveying 174 acres, it is recited that said Alexander Allison had, on July 10, 1861, contracted in writ-

ing to sell and convey to said Thomas W. Evans the land therein described. It would seem, however, that Thomas W. Evans owned the tract in controversy at two different times. He claims to have first purchased 240 or 300 acres of raw prairie land (including the 200 acres in controversy) at $1.25 per acre, in 1851 or 1852, and that he traded this tract to Alexander Allison for his (Thomas W. Evans's) father's old farm in Pike county. That he received the negro girl "Bettie" and his father's old farm in Pike county in exchange for his Ralls county land, which includes the 200 acres in controversy; that in a few years thereafter he sold his Pike county land and repurchased the Ralls county land (including the 200 acres in controversy from Wm. Ely and Alexander Allison. Their version further is that the slave "Bettie" was turned over to Ely at $1,000 as part payment on the repurchase of said Ralls county land, including the 200 acres in controversy, but the record shows affirmatively that the Ralls county land, including the 200-acre tract in controversy, was owned by Alexander Allison alone at the time of such repurchase, and that the contract for such repurchase was made by Thomas W. Evans, with Alexander Allison alone, and not with Allison and Ely. Thomas W. Evans would not say, or was unable to say, how much the Ralls county land cost on its repurchase, or what portion of the purchase price he paid, although he admitted that it cost more than $1,000. He claimed that he had nothing with which to pay. The record adduced in evidence showed that he acquired title to his father's old place in Pike county by deed from his father, Joseph Evans (and not from Alexander Allison), dated January 25, 1857, while the bill of sale to "Bettie" is dated June 2, 1856, and he is further shown to have received various sums in the sales of certain other lands from 1857 to 1868, amounting to over $6,000, and also to have received about $1,200 in 1860 from his father's estate.

Taliaferro v. Evans.

The rule is that the granting of a new trial rests peculiarly within the discretion of the trial court (Iron Mountain Bank v. Armstrong, 92 Mo. 265; McCullough v. Phoenix Insurance Company, 113 Mo. 606); and in order to a reversal of its ruling in sustaining the motion in this case, it devolves upon the defendants to show that they have been prejudiced thereby.

One of the grounds assigned for error in the motion for a new trial, is the action of the court in "excluding legal and competent evidence offered by plaintiff."

This assignment is leveled at the ruling of the court in refusing to permit plaintiffs to prove that in a conversation that defendant, Thomas W. Evans, had with one Mrs. Lizzie Pollard in October or November, 1894, he stated to her that he was then insolvent, and that he would not pay anything; that he had nothing to pay with, and that he was rendered insolvent by the making of the deed in question to his wife. His insolvency was an important factor in passing upon the character of the deed from him to his wife, for if he had sufficient property left to pay all his debts after this conveyance it could not be assailed by his creditors upon the ground of fraud; upon the other hand, if he was rendered insolvent by this conveyance, if it was voluntary and without consideration, it was fraudulent as to his creditors; or if for a valuable consideration but with a fraudulent intent and to cover it from them, and his wife knew it and participated in such purpose, it was fraudulent and invalid as against them; and there could have been no better way of proving his insolvency than by his own admissions or statements to that effect. He, being one of the defendants, and one of the parties to the conveyance, his admissions, that he was inolvent and had no property, were admissible in evidence as against himself, although made after the execution of the deed from him to his wife.

Another of the grounds assigned in the motion for a new trial is that the finding was "against the weight of the evidence."

In all suits in equity, where the witnesses testify orally, this court defers somewhat to the finding of the trial court. [Erskine v. Loewenstein, 82 Mo. 309; Chouteau v. Allen, 70 Mo. 336; Springer v. Kleinsorge, 83 Mo. 159; Berry v. Hartzell, 91 Mo. 138; Bushong v. Taylor, 82 Mo. 666; Mathias v. O'Neill, 94 Mo. 520.]

As was said by SHERWOOD, J., in speaking for the court in Benne v. Schnecko, 100 Mo. 250: "But by such remarks we are not to be understood as meaning that we are concluded by the finding of facts by the court below; far from it. Such remarks do not mean that we have abdicated our supervisory control over questions of fact in equity causes; they only mean that when there is conflict of testimony, or where the testimony is evenly balanced and the finding of the chancellor appears to be correct, then we will so far defer to his finding as to sanction it by our affirmance; 'that and nothing more.' "

The same rule was announced in McElroy v. Maxwell, 101 Mo. 308; Glasgow Milling Co. v. Burnes, 144 Mo. 196.

The evidence was somewhat conflicting, and without knowing upon what ground the court set its finding aside and granted a new trial, we think its ruling was justified upon either of the grounds herein suggested, and in the absence of anything to the contrary, it must be presumed that it was upon one or both of those grounds. Its ruling must therefore be affirmed.

*Sherwood, P. J.* and *Gantt, J.,* concur.