ROBERTSON v. SHEPHERD AND STONE, Appellants.

Division Two, November 26, 1901.

1. **Contract:** EXECUTION THE ISSUE: BURDEN. Where, in a suit to enjoin the foreclosure of a deed of trust, on the ground that the beneficiary had executed a contract which acknowledged full payment and satisfaction of the indebtedness secured thereby, defendant denies the execution of such contract, the burden rests upon the plaintiff to show by the weight of the testimony that defendant did execute it, and if he does not so show he will not be entitled to recover.

2. **Equity:** VALIDITY OF CONTRACT: APPELLATE PRACTICE. The Supreme Court will defer somewhat to the finding of the trial court that a contract was in fact executed by the defendant, yet the cause being one in equity is practically a trial *de novo* in the Supreme Court, and will consider it, for the most part, as if it originated herein, and was to be heard here for the first time.

3. ————: FRAUD: SUPPLEMENTAL EXPLANATION: OVERCAUTION. A supplemental contract, signed only by the party whom it is attempted to bind by the main contract, made on the same day the main contract purports to be executed, "by way of explanation so that there can not be any misunderstanding of the meaning of the agreement," which in fact does not enlarge, vary or explain the agreement, is itself sufficient to raise a grave suspicion of fraud in the execution of the main contract.

4. ————: ————: FACTS STATED. A contract was in plaintiff's handwriting, and was one-sided, unreasonable in its provisions, and out of line with what a man of ordinary intelligence would agree to

under the circumstances, especially one of the business capacity, intelligence and experience of defendant. It released to plaintiff the two bonds and mortgages on lands amounting to $8,305 whose foreclosure plaintiff by this suit seeks to enjoin, and also his claim in a suit then pending based on a number of notes on which he afterwards obtained judgment for $6,802.51—all for the release by plaintiff of a recited claim for $750 borrowed money, which it was not shown defendant had ever borrowed, and in consideration of an adjustment of the funds of a partnership which was not shown to have ever existed, and a release of all claims for damages as bondsmen for attachment suits which failed, no estimate being placed on any of these items, and no damage suits having ever been brought. After this contract purports to have been signed, plaintiff failed to appear and present this contract in opposition to defendant's motion for a new trial in his suits on the notes, which suit he had lost, and which motion was then pending, and was thereafter sustained, and judgment rendered in favor of defendant herein for $6,802.51, and afterwards the plaintiff filed a motion for a new trial therein and in no way claimed or pretended that this contract was in existence, which if a genuine one would have been a complete bar to the judgment. *Held,* that these facts, coupled with the suspicious supplemental unilateral explanatory agreement of the same date, and the fact that defendant showed a complete alibi on the day the contract purports to have been made, compels a finding that the contract was void, and reverses the judgment, in the face of the fact that plaintiff and one other swear they saw him sign it on the date thereof, and although defendant admitted that the signature to the unilateral explanatory instrument was his, but denied that he ever signed it.

Appeal from Cass Circuit Court.—*Hon. W. W. Wood,* Judge.

REVERSED AND REMANDED (*with directions*).

*Chas. A. Loomis* for appellants.

(1)   In equity cases, the evidence is reviewable by the appellate court as upon first impression. It is the duty of the court to review the evidence and make its finding of facts. And it may admit or exclude evidence that was admitted or rejected by the trial court.   Baxter v. Donnell, 69 Mo. App. 588;

Goodrick v. Harrison, 130 Mo. 263; Bush v. Arnold, 50 Mo. App. 8; Hanna v. Land Co., 126 Mo. 1; Downing v. Dinwiddie, 132 Mo. 92; Harlan v. Moore, 132 Mo. 483; Padley v. Neill, 134 Mo. 372; Reynolds v. Kroff, 144 Mo. 433; Blont v. Spratt, 113 Mo. 48; Knapp v. Publishers George Knapp & Co., 127 Mo. 53; Lins v. Lenhardt, 127 Mo. 281; Benne v. Schnecko, 100 Mo. 250; McElroy v. Maxwell, 101 Mo. 294. (2) Where all the elements necessary to enable the appellate court to make a final decree are before it, it will not remand the cause, but will reverse the cause and enter a final decree. Darrier v. Darrier, 58 Mo. 222; Huff v. Shepherd, 58 Mo. 242; Pfau v. Breittenburger, 17 Mo. App. 19. (3) While the Supreme Court, in equity cases where the witnesses have testified orally, will defer somewhat to findings of the chancellor, that does not mean that they have abdicated their supervisory control over questions of fact in equity cases. It only means that where there is conflicting testimony and where the testimony is evenly balanced, and the finding of the chancellor appears to be correct, they will so far defer to his finding as to sanction it by affirmance. Benne v. Schnecko, 100 Mo. 250; McElroy v. Maxwell, 101 Mo. 294; Brown v. Fickle, 135 Mo. 405. (4) The judgment or decree of a court of competent jurisdiction is final as to the subject-matter therein determined. The principle, however, goes farther. It is not only final as to the matter determined, but also as to all other matters which the plaintiff might have litigated in the cause, which has been decided. 1 Herman on Estoppel, pp. 130-31, and 135, also 548 and 549; Dickey v. Heim, 48 Mo. App. 114; Lafoon v. Fretwell, 24 Mo. App. 258; Moran v. Plankington, 64 Mo. 337; Union Railway & Transportation Co. v. Traube, 59 Mo. 355; 21 Am. and Eng. Ency. of Law, pp. 216-17-18-19; Chouteau v. Gibson, 76 Mo. 45. (5) A judgment by default is conclusive and binding as to all matters that have been properly alleged in the complaint. Herman on Estoppel, pp. 42, 43, 44, 45, 46; Ins. Co. v. Smith, 117 Mo. 266; St. Louis v.

Lang, 131 Mo. 412; 5 Am. and Eng. Enc. of Law, p. 467. (6) When the validity of a contract has become *res adjudicata* by the decision of the Supreme Court, this court will in an action thereon between the same parties, refuse to re-examine objections which might have been, as well as those which were, made to its validity, in the former suit. Gas Light Light Co. v. St. Louis, 12 Mo. App. 572. (7) A judgment is *res adjudicata* not only as to all matter therein decided, but also as to all other questions which could have been raised in a motion for a new trial in said cause. Lafoon v. Fretwell, 24 Mo. App. 258. (8) A plaintiff can not maintain a bill in equity upon facts which would have constituted a defense to a former suit. He must set up and plead all matters which would constitute a defense to the first suit, and he can not afterwards relitigate these matters in a new action. When he has a defense which he neglects to make, he is estopped after the rendition of judgment from seeking relief in a court of equity. 1 Herman on Estoppel, pp. 260 and 276, secs. 229 and 241. (9) The plaintiff asked the trial court, and now asks this court, to grant plaintiff equitable relief, to cancel two deeds of trust held by the defendant and to take from him his interest therein, and cancel the same of record. Before a court of equity will exercise the extraordinary power of cancellation, the plaintiff must prove to the satisfaction of the court, by evidence that is so clear, cogent and convincing and so free from doubt as to leave no reasonable grounds for doubt or hesitancy in the mind of the chancellor, that he is entitled to the relief asked for. And unless the plaintiff has so proven, the judgment and decree of the court must be for the defendant. Johnson v. Quarrels, 46 Mo. 423; Forester v. Scoville, 51 Mo. 268; Bobb v. Bobb, 7 Mo. App. 501; Jackson v. Wood, 88 Mo. 76; Brown v. Fickle, 135 Mo. 405. (10) The execution of the contract sued on is denied under oath by the defendant. The burden of proof rests upon the plaintiff to prove by a preponderance of the testimony to the satisfaction of the court that the

defendant did execute the contract sued on.  And unless the plaintiff has so proven, the judgment and decree of the court must be for the defendant.

*R. T. Bailey* and *Harkless, O'Grady & Crysler* for respondent.

(1)  This case involves no law points.  It is purely a question of fact.  The lower court heard both sides of the question; had all the witnesses before him, all of the exhibits, and was fully conversant with all the details of the complicated affair that took place before him and entered a decree for plaintiff.  The evidence upon the part of the plaintiff tended to show that Shepherd and Robertson had had dealings for many years.  That they had litigation pending in Ray county and the reading of the pleadings in that case on both sides if indeed this court goes that far or finds it necessary to do so, demonstrated that matters were very much complicated and certainly very difficult to comprehend.  (2)  What judgment could have been rendered in the Ray county case any different from the one which was rendered if Robertson had not appeared or answered therein?  It is too plain for argument that Shepherd would have obtained the same judgment which he did obtain, and which was left in full force and effect by the decision of the Supreme Court in that case.  (3) What would have been the result had Robertson commenced an independent action in respect to the matters alleged in his answer in the Ray county case if he had not been present and his cause had been dismissed by the court for the want of prosecution?  It would have been simply an involuntary nonsuit entered against him and he could undoubtedly have brought the suit over again without prejudice.  (4)  In the case at bar, the decree in express terms dismisses Robertson's counterclaim in the Ray Circuit Court and, hence, it had the same force and effect as though he had been nonsuited in an independent action in the matters referred to in his answer.  (5)  The court having

nonsuited Robertson in the Ray Circuit Court as to the matters set up in his answer, he is not precluded from prosecuting a nonsuit in respect to the same subject. Wright v. Salisbury, 46 Mo. 26; Mason v. Summers, 24 Mo. App. 182; Burwell v. Knight, 51 Barb. 267; Parker v. Cleveland, 1 Clark (Mich.) 238; Spradling v. Conway, 51 Mo. 53; Nordmauser v. Hitchcock, 40 Mo. 182. (6) The judgment, therefore, rendered in favor of Shepherd for the $6,133, is conclusive against Robertson in every matter which he pleaded or which he might have pleaded, which went to overturn Shepherd's cause of action. And is *res adjudicata* as against Robertson. In respect to the matters pleaded by Robertson and in which he asks equitable relief, the court having granted a new trial, and having dismissed Robertson's action in which he asked affirmative relief, there was no adjudicating upon the merits of the same, and, hence, there is nothing in the record which operates as *res adjudicata* in respect to the subject-matter of present litigation. We insist that the plea of *res adjudicata* interposed by the defendant in this case, is wholly without merit.

BURGESS, J.—The petition alleges that on the fifth day of June 1891, the plaintiff, together with his wife, executed a promissory note in the sum of $2,000, together with ten interest coupons for $70 each, all of which coupons have been paid, which note was made payable to Samuel B. Smith, and to secure the payment of it, the plaintiff and his wife executed to D. E. Stoner, trustee for Smith, a deed of trust on property in Kansas City, Missouri, described as lot 6 and the south eleven feet of lot 5, block 4, East Side Place; that the deed of trust was recorded at Kansas City on July 14, 1891, that the deed of trust and note were in the hands of H. C. Shepherd, the co-defendant, who was threatening to foreclose it. That Stoner, the trustee, refused to act, and that R. S. Stone, the sheriff of Jackson county had become the successor in the trusteeship, and that said Shepherd would cause R. S. Stone,

the sheriff, to sell the property unless restrained by injunction.

The petition then proceeds to set up that Shepherd also had another note and deed of trust, to-wit, a note in the sum of $4,750 upon the same property, which note and deed of trust was given by William McClurg to the plaintiff himself, together with six interest coupons thereto attached in the sum of $142.50 each; that in order to secure payment of the same, McClurg had given a deed of trust on the same property under date of April 23, 1894, to Jas. H. Harris, as trustee for T. O. Robertson, and that this deed of trust was recorded in Kansas City, Jackson county, that Harkless had declined and refused to act as trustee and that R. S. Stone, the sheriff, became the successor in trust for the purpose of foreclosing this deed of trust; that this deed of trust was also at the time in the possession of H. C. Shepherd, who claimed to hold the same by transfer from T. O. Robertson. That Robertson was the owner of the real estate subject to the two above-described deeds of trust, and was the owner at the time the first-described deed of trust was given; that he thereafter conveyed the property to McClurg, subject to the first mortgage, and while the said McClurg remained the owner thereof, he (McClurg) executed said second deed of trust to the plaintiff and after executing it, McClurg reconveyed the property to the plaintiff, and that before the execution of the contract hereinafter mentioned, Shepherd come into possession of both said deeds of trust and notes. That there were also two taxbills in the sum of $117.13 total, with interest, issued for paving the street in front of the property which were also in the possession of H. C. Shepherd at the time of making the contract hereinafter mentioned. That afterwards, on or about the thirtieth of September, 1896, the plaintiff and H. C. Shepherd entered into a contract by which both said deeds of trust and all notes and coupons secured thereby and the special taxbills were settled, cancelled and discharged in full, the agreement by which it was settled and discharged being as follows:

"This agreement made and entered into this thirtieth day of September, 1896, by and between T. O. Robertson and H. C. Shepherd, witnesseth:    That the said T. O. Robertson does, in consideration of the covenants and agreements hereinafter made by the said H. C. Shepherd, hereby release H. C. Shepherd from any and all liability for the entire stock of drugs and fixtures formerly belonging to James M. Love & Company, and by them sold to T. O. Robertson, which were located at 546 Main street, Kansas City, Missouri, and which belonged to T. O. Robertson and were sold by H. C. Shepherd and proceeds thereof used by H. C. Shepherd, for which said T. O. Robertson hereby receipts said H. C. Shepherd for in full, and T. O. Robertson hereby assigns all right for damages in the case of Fuller & Fuller Company against said T. O. Robertson, wherein the above-described stock of drugs and fixtures were attached by Fuller & Fuller Company and said attachment dissolved, and T. O. Robertson hereby assigns, to and authorizes H. C. Shepherd to collect any and all moneys for damages from Fuller & Fuller Company or their bondsmen or both, and said T. O. Robertson hereby assigns and transfer to H. C. Shepherd all right for damages in the case of Woolf Brothers against T. O. Robertson wherein the above-described stocks of drugs and fixtures were attached by Woolf Brothers and said attachment dissolved, and said T. O. Robertson hereby authorizes H. C. Shepherd to collect any and all money for damages from Woolf Brothers or their bondsmen or both, and T. O. Robertson does hereby assign to H. C. Shepherd all his interest in or rights growing out of this number 24,221 and 24,223 wherein I. M. Ridge attached the stock of drugs and fixtures then located at 915 Main street, Kansas City, Missouri, and T. O. Robertson hereby assigns all his interest in said stock of drugs and fixtures to H. C. Shepherd, and further assigns all right for damages against I. M. Ridge or his bondsmen, or both, on account of said last-mentioned attachment suits number 24,221 and 24,223, and authorizes said H. C. Shepherd to collect any and

all moneys growing out of said suits, including the $1,050 now in the hands of the sheriff of Jackson county, Missouri, and these presents shall be a receipt in full for the same; and the said T. O. Robertson hereby further receipts H. C. Shepherd in full for seven hundred and fifty dollars paid by T. O. Robertson, the receipt of which is hereby acknowledged by and between the parties hereto, and said T. O. Robertson hereby releases said H. C. Shepherd from all liability for partnership funds heretofore existing between the said T. O. Robertson and H. C. Shepherd, and this is a receipt in full for any and all such funds, and T. O. Robertson releases any and all his rights existing on account of such partnership existing between T. O. Robertson and H. C. Shepherd.   In consideration of all the afore-mentioned receipts, assignments, releases, moneys and agreements, the said H. C. Shepherd does hereby agree to turn over to T. O. Robertson and cancel of record two certain mortgage bonds, one for $2,000 signed by T. O. Robertson and wife, in favor of Samuel S. Smith, and by him assigned to H. C. Shepherd, and bond dated June 5, 1891, and secured by trust deed recorded July 14, 1891, in book B 473, page 541, in Kansas City, Missouri, and the other mortgage bond is for $4,700, with six coupons attached, each for $142.50; both bond and coupons are executed by William McClurg and his wife in favor of T. O. Robertson, and in Shepherd's hands as collateral to any liability for his signing a forthcoming bond for Robertson to replevin the stock of drugs (first mentioned on first page of this contract from Woolf Brothers), and H. C. Shepherd agrees to withdraw said $4,750 bond and coupons from the court filed at Richmond, Ray county, Missouri, and turn over to T. O. Robertson and cancel of record, bond and coupons are dated April 23, 1894, and secured by trust deed recorded November 13, 1894, in book B 570, page 617, in Kansas City, Missouri, and H. C. Shepherd agrees to turn over to T. O. Robertson and cancel of record two special taxbills for paving Olive street, No: 51 and 52, amounting to $117.13,

said bonds and taxbills are liens until released of record on lot 6 and south 11 feet of 5, block 4, East Side. Place, an addition to Kansas City, Missouri.

"This agreement settles all litigation between the parties hereto, and cancels all notes and accounts between them, and this contract shall be fulfilled within a reasonable length of time from this date. It is agreed that a letter-book copy shall be made of this agreement and treated as the original."

"T. O. ROBERTSON.<br>"H. C. SHEPHERD.

"Witness to signatures, J. F. Robertson."

That thereafter on the same day, the defendant Shepherd, as part and parcel of said contract made and signed another contract or part of said original contract as follows, to-wit:

"Kansas City, Mo., September 30, 1896.

"By way of explanation so that there can not be any misunderstanding of the meaning of the agreements made by me in the contract this day executed by T. O. Robertson and myself, wherein I am to cancel and turn over to T. O. Robertson two bonds, one for $2,000 the other for $4,750, together with six coupons for $142.50 each. Both bonds are secured by deeds of trust on lot 6 and south eleven feet of lot 5, block 4, East Side Place, an addition to Kansas City, Missouri, and under said contract, I am to cancel and turn over to T. O. Robertson the following personal notes executed by T. O. Robertson: one for $500, dated July 16, 1894; one for $500, dated August 27, 1894; one for $2,500, dated September 22, 1894; one for $300 dated October 1, 1894, and another for $710.95, dated November 7, 1894; all of said notes are made payable to me except the $500 note dated August 27, 1894, is made to J. G. Barnett and assigned to me. All of said notes were settled in a contract made by T. O. Robertson and myself on

Vol 165 mo—24

April 9, 1895, which contract was reformed and decree entered in Ray county, Missouri, and I agree not to prosecute said action further in the court of Ray county, Missouri, or any other court. As the object and purposes of the contract this day entered in and signed by myself and T. O. Robertson (which contract remains unchanged and in full force and effect) is an absolute settlement of any and all matters existing or that has heretofore existed between T. O. Robertson and myself up to this thirtieth day of September, 1896.

"In witness whereof, I hereunto subscribe my name the day and year last above written.

"H. C. SHEPHERD."

The petition then alleged that the defendant had wholly failed to comply with the terms of the agreement and had refused to cancel the deeds of trust and notes, coupons and taxbills or to surrender them. And that Shepherd was proceeding to advertise under the $4,750 deed of trust through the sheriff as alternative trustee, and had set the sale for the twelfth of April, 1897. Petition prayed that the notes and coupons secured by the deeds of trust as well as both deeds of trust and the taxbills be adjudged and found to be paid and cancelled in full, and that Shepherd be directed to surrender the same for cancellation and surrender the deeds of trust—in default of his doing so, that the court enter a decree cancelling the same and finding that the obligations were settled and discharged, and that a writ of injunction be issued restraining the sheriff from selling under the $4,750 deed of trust, and that Shepherd be restrained from thereafter attempting to foreclose the $2,000 deed of trust. Writ of injunction was issued and the sale restrained.

Defendant Stone, by answer, denied all allegations in the petition.

Defendant Shepherd filed answer duly verified by him in which he admitted the execution of the $2,000 note and mort-

gage, the interest coupons, and that they were secured by deed of trust as alleged in the petition. That Stone, the sheriff, was alternative trustee. Admitted that on the twenty-third day of April, 1894, William McClurg and wife executed to T. O. Robertson the note for the $4,750, with six coupons attached in the sum of $142.50 each, and executed the deed of trust, to Harkless, trustee for Robertson, to secure the payment of the same, and that Harkless has declined to act as trustee, and that he (Shepherd) was in possession of all the notes, deeds of trust and taxbills, claiming to own them. It was then averred that he did not make, sign, execute or deliver to the plaintiff or anyone for him, either of the writings bearing date September 30, 1893, and that the same were not his acts and deeds.

The answer alleged that on the twenty-eighth of May, 1895, Shepherd brought an action in Ray county against T. O. Robertson, which action was to recover upon one promissory note for $500, dated July 6, 1894, and upon another promissory note dated August 27, 1894, for $500 payable to J. G. Barnett, which was assigned to the plaintiff, and upon a promissory note for $2,500, dated September 22, 1894, and upon a promissory note in the sum of $300, dated October 1, 1894, and upon a promissory note for $710.95, dated November 7, 1894, and that on April 8, 1895, the plaintiff and defendant had an account stated between them and a balance struck by which there was $6,133 found to be due to the plaintiff by T. O. Robertson, including all the notes sued upon, which petition in the Ray Circuit Court prayed judgment for $6,133. The answer proceeds to set out the contract out of which the $6,133 of indebtedness grew in the Ray county action, and that the action in the Ray county court came on for trial the fourth day of February, 1897, when the court, upon a hearing upon default, rendered judgment against the defendant Robertson for the total sum of $6,802.51. That an appeal was afterwards taken in said cause to the Supreme Court, and that the Supreme Court afterwards affirmed the judgment in Ray

county, because the defendant Robertson in that case had not perfected an appeal. It then alleges that the judgment is conclusive as against the contract sued upon by the plaintiff of date September 30, 1896.

The plaintiff Robertson filed a reply to this answer of Shepherd's and admitted that at the time the contract herein sued upon, dated September 30, 1896, was executed, there was pending in the circuit court of Ray county a case wherein Shepherd was plaintiff and Robertson defendant, and that the action in Ray county had been tried long prior to the thirtieth of September, 1896, and that a judgment was rendered on the trial of that case in favor of Robertson. The reply alleged that after the rendition of the judgment, Shepherd had filed his motion for a new trial in that case and that when the contract dated September 30, 1896, and declared upon in this case was made, the cause was pending in Ray county upon a motion for a new trial filed by Shepherd; that after the signing of said contract sued upon in this cause, which settled all the controversies pending in Ray county, it became the duty of Shepherd, under the contract, to dismiss that action, but Shepherd not only failed to do so but without any notice to Robertson or his attorneys, and in violation of the contract of September 30, 1896, and practicing a fraud on the court of Ray county, afterwards went into that court, knowing the entire controversy had been settled by the contract, declared upon and fraudulently obtained the Ray Circuit Court to sustain his motion for a new trial, in the absence of the plaintiff and his attorneys and without notice to them, and then immediately took a judgment against the plaintiff, which is the same judgment that Shepherd is seeking to plead as a bar to this case, and that Robertson thereupon afterwards brought an action in Ray county against Shepherd, in equity, to set aside that judgment, because the same was procured by a fraud upon the plaintiff as well as on the court. The reply then further stated that said case and litigation in Ray county did not involve or affect in any way the

deeds of trust, notes and taxbills which are sought to be cancelled in this cause, but was an entirely separate and distinct cause of action from the cause of action in this case, and denied every other allegation in the answer.

There was judgment for plaintiff and a decree rendered in accordance with the prayer of the petition, cancelling the obligations which defendant claimed to hold.      Defendants appeal.

It appears that the proceeding in Ray county was originally instituted in October, 1895, by Shepherd against Robertson, to recover upon five notes.    The petition also set up that the plaintiff and defendant in April, 1895, had made a contract by which a balance was struck between them which showed that Robertson owed Shepherd $6,133, which latter sum included the notes sued on in that case, and prayed judgment upon these notes in several counts, and in the eighth count upon the contract which included the notes.    That contract in no way involved or had anything to do with the $4,750 mortgage or the $2,000 mortgage on the property in controversy in this case, but the $4,750 note at that time upon the property in controversy in this case was in Shepherd's hands and claimed by him to be held as collateral security to the indebtedness which he sued on in Ray county.    Robertson set up as a defense in that case in Ray county that Shepherd was indebted to him (Robertson) upon a note for $500, which Robertson had executed to Shepherd to be negotiated; and further that one of the notes for $500 sued on by Shepherd in that case, was simply a note given to equalize a balance against the note of $500 which Robertson had executed to Shepherd to be negotiated for Shepherd's benefit; and that the indebtedness claimed by Shepherd on the note was afterwards cancelled by Robertson selling to Shepherd one hundred and twenty-five shares of the capital stock in a certain drug company; and further set up in his answer as to the other $500 note sued upon by Shepherd in that case, that it was signed in blank by Robertson and de-

livered to Shepherd, and that Shepherd was to use the note to procure the money for Robertson; that said Shepherd filled up the blank payable to himself and that the note was also afterwards cancelled by a transaction between Shepherd and Robertson by transferring an interest to him in a certain drugstore; that as to the $2,500 note sued on by Shepherd in that case, the answer of Robertson stated that in 1894 he borrowed $2,500 from Shepherd and gave his note, and that three days afterwards a contract was made between Shepherd and Robertson by which Shepherd purchased from Robertson a half interest in the drugstore at 915 Main street, in consideration of which Shepherd was to deed to Robertson certain property in Kansas City, known as the Dripp Street property, and turn over to Robertson in addition the $2,500 note, as well as the other notes theretofore mentioned.

Robertson in that case then proceeded to set out the contract of April 8, 1895, sued upon by Shepherd in that case, that is the contract which agreed that the total indebtedness was $6,133, but the contract as set up by Robertson in the answer was different from the one set up by the plaintiff in that it pleaded that Shepherd, after having secured the contract to be signed, had surreptitiously and unlawfully abstracted the middle sheet thereof, so as to make it read different from what they had agreed upon, and with the abstracted sheet in, it cancelled all the indebtedness of every kind from Robertson to Shepherd, and as a matter of fact Robertson owed him nothing. The cause afterwards came on for trial in Ray county before Judge Broaddus, and after hearing all the evidence the court found that Robertson owed Shepherd nothing, and entered a decree finding that Shepherd had fraudulently and without Robertson's consent changed the contract after it was signed, by taking from it a certain sheet, and then and there reformed the contract by his judgment, which cut out all claim of every kind of Shepherd's. After this judgment had been rendered in Ray county, it is claimed by plaintiff that this agreement of Sep-

tember 30, 1896, sued upon, was made and at that time Shepherd had no rights whatever, as the judgment in Ray county stood against him. After September 30, 1896, the record shows, the motion for a new trial in Ray county was taken up and sustained without notice to Robertson, and because Robertson did not appear, and that a judgment was then immediately entered by default in favor of Shepherd and against Robertson, in violation of the agreement made September 30, 1896, and which is sued upon in this cause, and it is that default judgment that they plead in bar of this action.

The paramount issue in this case is with respect to the execution of the contract sued upon by the defendant, which he denies and plaintiff affirms. It therefore devolved upon plaintiff to show by the weight of the testimony that defendant executed it, otherwise he was not entitled to recover, and while the trial court found in favor of plaintiff, and the Supreme Court will defer somewhat to that finding (Benne v. Schnecko, 100 Mo. 250; Chouteau v. Allen, 70 Mo. 336; Erskine v. Loewenstein, 82 Mo. 301; Springer v. Kleinsorge, 83 Mo. 159; Berry v. Hartzell, 91 Mo. 138; Bushong v. Taylor, 82 Mo. 666; Matthias v. O'Neill, 94 Mo. 530; Taliaferro v. Evans, 160 Mo. 380), the case being one in equity is practically triable *de novo* in this court, and will "be considered, for the most part, as if it originated here and was to be heard for the first time." [Lins v. Lenhardt, 127 Mo. 271.] While the evidence adduced by plaintiff tended to show, and he testified positively to that fact, that it was signed by defendant in the law office of Messrs. Harkless, O'Grady & Crysler, No. 701 to 706, American Bank Building in Kansas City, on the thirtieth day of September, 1896, the day upon which it purports to have been executed, the decided weight of the evidence is to the effect that defendant was not in Kansas City upon that day, but was elsewhere, so that it was impossible that it could have been executed upon that day, but if the contract was ever executed at all, the time of its execution was not material, and

the evidence adduced by defendant tending to show that it was not executed upon that particular day only served to contradict plaintiff and his witness who testified that it was, and when taken in connection with other facts in evidence tended to show that it never was in fact executed by defendant at any time. Upon this question, that is, whether the contract was ever in fact executed by defendant, the evidence was conflicting, and in passing upon the question as to its execution, it is worthy of note that the petition showed that on the same day of the execution of the original, Shepherd executed to Robertson another contract confirmatory of and explanatory of the first. While this last contract was not read in evidence upon the trial, it was made part of the petition, and is part of the record in the case. The question then which naturally presents itself is as to its purpose? It says, "By way of explanation so that there can not be any misunderstanding of the meaning of the agreement" theretofore made upon the same day, etc. But why the necessity of an explanatory instrument, especially when it throws no light whatever upon the original, and is no broader or more comprehensive in its terms? It is true that defendant admitted, while on the witness stand, that the signature to this last contract was his, but denied that he ever signed the instrument.

As was said by SHERWOOD, C. J., in speaking of a somewhat similar circumstance, in Baldwin v. Whitcomb, 71 Mo. 651: "Its only purpose could have been to give an appearance of fairness—a color of verity and validity to the transaction. . . . The unnecessary affidavit of Bridges would, therefore, seem to bring the case within the principle of the maxim: '*Clausulae inconsuetae semper inducunt suspicionem.*' For, whenever fraud is the matter in issue, any unusual clause in an instrument, any unusual method of transacting the business, apparently done with a view for effect and to give to the transaction an air of honesty, is of itself a badge of fraud. For

'when the part is overacted the delusion is broken and the fiction appears.' [Comstock v. Rayford, 12 Sm. & Marsh 369.] This has been the rule ever since Twyne's case, 3 Coke 81, where it was held a circumstance of grave suspicion that a clause in the conveyance recited that the gift was made honestly, truly and bona fide." [Bump on Fraud. Convey., 50; State to use v. O'Neill, 151 Mo. 67.]

And in this connection it may be well to inquire what benefit Shepherd was to derive from the contract even though he received all that it provided he was to get?

In the first place, by the terms of the contract Robertson releases Shepherd from all liability on account of the proceeds of the sale of a stock of drugs located at 546 Main street, Kansas City, of which he (Robertson) was the owner, and which was sold by Shepherd and the proceeds used by the latter; and assigns all right for damages in the case of Fuller and Fuller Company, against Robertson, wherein said stock of drugs and fixtures were attached, and said attachment dissolved. Also his claim for damages against Woolf Brothers and others, for wrongfully suing out attachments against said drug company, including $1,050 then in the hands of the sheriff of Jackson county derived from the sale of the drug company property under writs of attachment sued out by one Ridge against said company for rent, and which the evidence shows were sustained, and entitled Ridge to the money or sufficient thereof to pay off those claims. He never at any time received a dollar of that money, and the claims for damages on the other attachment bonds were of uncertain value.

By the contract, Robertson further receipts and releases Shepherd in full for $750, paid by Robertson to him, and also releases Shepherd from all liability for partnership funds heretofore existing between them, the consideration expressed being, "in consideration of all the above-mentioned receipts, assignments, releases, moneys and agreements," while it was not in

evidence, aside from the recital in the contract, that Shepherd ever owed Robertson $750 or that any partnership ever existed between them.

In the next place, by the terms of the contract Shepherd, without any farther or additional consideration, agrees to release the $2,000 deed of trust which he had to take up in order to protect a second deed of trust to secure the payment of bonds and coupons to the amount of $4,750, which Robertson had placed in his hands as collateral security, and which it seems was evidenced by bond and coupons then on file in the circuit court of Ray county in the suit of Shepherd v. Robertson.

Moreover, Shepherd by the terms of this contract is made to further agree to withdraw said $4,750 bond and coupons from the "court files at Richmond, Ray county, Missouri, and turn over to T. O. Robertson and cancel of record. Bonds and coupons are dated April 23, 1894, and secured by trust deed, recorded November 13, 1894, in book B 570, page 617, in Kansas City, Missouri, and H. C. Shepherd agrees to turn over to T. O. Robertson and cancel of record two special taxbills for paving Olive street, No. 51 and 52, amounting to $117.13. Said bonds and taxbills are liens until released of record on lot 6 and south eleven feet of 5, block 4, East Side Place, an addition to Kansas City, Missouri." In conclusion, it was agreed that the "agreement settles all litigation between the parties hereto, and cancels all notes and accounts between them."

By this agreement, if executed by defendant Shepherd, he releases a mortgage bond for $2,000 which he held on Robertson and secured by real property, tax liens on the same property amounting to $117.13, a bond which he held against Robertson for the sum of $4,750, secured by deed of trust on the same property which he held as collateral to any liability for his signing a forthcoming bond for Robertson to replevy the stock of drugs from Woolf Brothers, besides, the demands against Robertson upon which judgment was thereafter rendered in

the circuit court of Ray county in his favor against Robertson for the sum of $6,802.

In satisfaction of these matters, Shepherd receives under the contract $750, which there was no evidence was ever paid aside from the recital to that effect in the contract; claims for damages, upon which no estimate was fixed, on the different attachment bonds, the amount of which could only be ascertained, if ever, at the end of probable litigation; and liability on his part to Robertson on account of partnership funds, of a partnership which is said to have theretofore existed between them, when in fact, in so far as the record discloses, there never was any such partnership.

We have not overlooked the fact that there was some evidence adduced by plaintiff which tended in a remote degree to show that defendant took charge of the litigation growing out of the attachment suits in pursuance of the contract in suit; upon the other hand, there was evidence on the part of defendant of equal cogency that that arrangement was under another and different contract. To say the most for it, this evidence was so conflicting that it was of no consequence as tending to show that defendant executed the contract in suit.

The contract is in plaintiff's handwriting, and was prepared by him, and is so one-sided, so unreasonable in its provisions, and so out of line with what any man of ordinary intelligence would agree to under the circumstances, and especially of the business capacity, intelligence and experience of Shepherd, that, when taken in connection with the conflicting evidence as to the time and place that plaintiff claims it was executed; the explanatory contract, which while confirming the execution of the original, cast suspicion upon it; and the further fact still of no less significance, the failure of plaintiff to present or mention the contract, or in any way call the court's attention to it, in opposition to the motion by Shepherd for a new trial in his suit against Robertson in the Ray Circuit Court wherein judgment had been rendered in favor of Robertson,

and which said motion was then pending, was thereafter sustained, and judgment rendered in plaintiff's favor on the fourth day of February, 1897, for the sum of $6,802.51; and the still further fact that after the rendition of this last judgment the defendant therein in due time filed his motion for a new trial, and in no way claimed or pretended that the contract in question was in existence, although it shows upon its face that the demands merged in that judgment and the suit itself are embraced in the terms of that contract—it seems to be absolutely inconsistent with the idea that the contract was ever signed or executed by defendant. And we are constrained to so hold.

We therefore reverse the judgment and remand the cause with directions to the court below to dismiss the bill, and dissolve the injunction. All concur.