# L. M. RUMSEY MANUFACTURING COMPANY et al. v. KAIME, Appellant.

### Division Two, March 31, 1903.

1. **Equity Practice:** APPEAL: OVER ISSUE OF CORPORATE STOCK. Where the witnesses testified orally the Supreme Court will defer somewhat to the finding of the chancellor, but will consider the case for the most part as if it originated in this court and was to be here heard for the first time. But in this case where the issue turned on the value of a certain stock of goods, as to which there was much conflict of testimony, the Supreme Court defers to the finding of the chancellor on that point.

2. ————: ————: ————: LIABILITY OF STOCKHOLDERS. Where a corporation takes property in payment of its capital stock at a valuation in excess of its fair value, its stockholders, to whom have been issued paid-up stock, must respond to the creditors of the company for the excessive valuation placed upon the property, that is, for the difference between the real value of the property and the capitalization of the company.

3. ————: ————: CORPORATION: PROPERTY AS CAPITAL. Property may be taken in payment of the capital stock of a corporation, but it must be taken at a fair, just, lawful, *bona fide* valuation. Nor does it make any difference that the incorporators did not intend any fraud on the creditors of the company, if the property was in fact taken at a valuation in excess of its real value and of the paid-up issue of stock.

Appeal from St. Louis County Circuit Court.—*Hon. R. Hirzel,* Judge.

AFFIRMED.

*Clinton Rowell* and *Joseph H. Zumbalen* for appellant.

(1) The decision and findings of the court below are contrary to the evidence, and the weight of the evidence; and, as the case is one in equity, this court will review the findings of facts. Fitzpatrick v. Weber (Mo.), 68 S. W. 913; Robertson v. Shepherd, 165 Mo. 360; Hoeller v. Haffner, 155 Mo. 589; Benne v. Schnecko, 100 Mo. 250; Glasgow Milling Co. v. Burnes, 144 Mo. 192; Swon v. Stevens, 143 Mo. 384; Dalrymple v. Craig, 149 Mo. 345. (2) The trial court misunderstood the most important evidence in the case, as appears from its written opinion; and, when properly corrected in this particular, according to the court's own theory and findings, the judgment should be for the defendant. (3) Property taken by a corporation in payment of its capital stock must be a fair and just equivalent in value to the corporation to the par value of the stock issued therefor. Liebke v. Knapp, 79 Mo. 24; Garrett v. Mining Co., 113 Mo. 330; Van Cleve v. Berkey, 143 Mo. 109; Berry v. Rood (Mo.), 67 S. W. 645; Gamble v. Water Co., 123 N. Y. 91. (4) Where property of real, as distinguished from speculative, value is taken in payment of capital stock, and the parties have acted fairly and honestly in estimating the value thereof, they are entitled to the benefit of whatever margin there may be for honest differences of opinion in the valuation of the property. State Trust Co. v. Turner (Ia.), 82 N. W. 1029; Elyton Land Co. v. Birmingham, etc., Co., 92 Ala. 425.

*Albert N. Edwards* and *W. Palmer Clarkson* for respondents.

(1) Where property is taken by a corporation in payment of subscriptions to its capital stock, the only question is what the property was actually worth at the time. The requirement that the stock must be paid in money or property at its money value enures to the benefit of all persons who may become creditors of the corporation. Van Cleve v. Berkey, 143 Mo. 109. (2) The valuation placed upon the stock of goods by the court was more than fair to defendant. The full value of the goods was $60,187.35, and the court fixed $77,-000, as their value. (3) The sale of the goods in question was not a sacrifice sale; it was made after the assignee had been selling the pick of the stock for six months and after he had used all possible efforts to sell; it was not a knock-down auction sale but was made on sealed bids subject to the approval of the court. (4) This is not merely a case where the opinions of the defendant's expert witnesses are opposed by plaintiffs'; the physical facts as to the sale, the actions of defendant and his associates as to the bid, the remarkable resolutions to ''protect'' defendant, the 'uncontradicted fact that one-third of the goods never were sold by their company, and the history of the company, show conclusively that the goods were overvalued. Expert testimony is merely advisory and may be wholly disregarded when deemed unreasonable. State v. Darrah, 152 Mo. 522. (5) The directors of a corporation have no right to deal with themselves and for the corporation at the same time. They can not buy from themselves for the company at a profit to themselves. Jackson v. Executors, 100 Mo. 130; Hill v. Rich Hill Coal Mining Co., 119 Mo. 9.

BURGESS, J.—This is a suit in equity by the L. M. Rumsey Manufacturing Company, a corporation,

and other judgment creditors of the Detrick Supply Company, against David F. Kaime and others, as stockholders of said supply company. The bill was dismissed as to all the defendant stockholders except Kaime.

The suit was instituted for the benefit of plaintiffs and all other creditors of the Detrick Supply Company who wished to join therein, and to become parties plaintiff therein.

The petition alleges that the Ripley-Detrick Supply Company was duly incorporated on January 10, 1894; that on April 8, 1895, the name of the Ripley-Detrick Supply Company was legally changed to the Detrick Supply Company, and that on February 25, 1896, the Detrick Supply Company became wholly insolvent and made a voluntary assignment to Albert Webb for the benefit of its creditors, in pursuance of the statute in such cases made and provided. That the Ripley-Detrick Supply Company, afterwards called the Detrick Supply Company, was incorporated with an authorized capital stock of $75,000, divided into 750 shares of the face or par value of $100 each, and that said shares in the Detrick Supply Company were subscribed as follows: David F. Kaime, 505 shares; Geo. F. Detrick, 234 shares; Wm. H. Barere, 9 shares; Lyman B. Ripley, 2 shares. That Geo. F. Detrick subscribed such shares and received the same as trustee for others and not for himself; that the shares were issued as fully paid and non-assessable, when in fact $46.66 were and remain unpaid on each share. That prior to and on February 25, 1896, the defendant Kaime acquired and became the holder and owner of all the shares of stock not previously subscribed. That the creditors of said concern have proved up claims in the sum of $55,832.17 before the assignee and had the same duly allowed by the assignee. That the said assignee has declared and paid a dividend of twenty per cent on said claim and that eighty per cent is wholly

unpaid. That the assigned estate is wholly insolvent, and no further dividends can or will be declared by the assignee. That there is now due by the stockholders the sum of $46.66 on each share of stock, which constitutes a trust fund in favor of the creditors and especially the plaintiffs herein.

The bill then sets forth the allowance of each plaintiff herein separately, and prays that an account may be taken between the company and its stockholders, and that the amount actually paid in by the stockholders may be ascertained and fixed by the court, and that the action of the company in issuing said shares of stock as fully paid and non-assessable may be declared fraudulent and void as to these creditors to the extent of which the same remains unpaid, etc.

Defendant Kaime's answer is, first, a general denial; second, an averment that the plaintiffs contracted the alleged debts with the Detrick Supply Company with full knowledge of all the facts relating to the formation of said corporation, and the payment of stock subscribed for the corporation; third, a statement that there was another action pending between the same parties and for the same cause of action, in the city of St. Louis—all of which was not proven.

That defendant Kaime owned five hundred and twenty-five shares of stock in the Detrick Supply Company, is not denied; therefore, his liability, if any, must be reckoned from that standpoint.

Nor is there any dispute in regard to the incorporation of the Ripley-Detrick Supply Company, as alleged, its absorption by the Detrick Supply Company and the final insolvency of that company. Nor is there any question but that the capital stock was placed at $75,000, and that the total amount paid in was $40,000, in cash, with which a certain stock of goods was bought and placed in the corporation at an alleged sufficient profit to enable it to issue fully paid

up stock for $75,000, and this transaction plaintiffs allege was fraudulent.

The vital question, therefore, is as to the actual fair market value of the stock of merchandise purchased by the original stockholders of the Ripley-Detrick Supply Company from Messrs. Kaime, Ripley and Detrick.

The court found and observed as follows:

"The firm of Bronson & Ripley failed during the financial panic in July, 1893, and their affairs were put into the hands of Mr. W. B. Homer as receiver. He caused their whole stock of goods to be carefully appraised, and this appraisement showed the total value of the goods to be $102,000. This was the total appraised value, but Mr. Homer's appraisers testified that the fair market value of those goods was probably $125,000. Of these goods he sold $45,000 in cash, leaving the property worth, at the outside, from $75,000 to $80,000 on his hands. This he advertised for sale, under order of court, and Messrs. Kaime, Ripley and Detrick became the purchasers thereof at the price and sum of $60,187.35. Before they made this offer, or bid, which was accepted, they caused the goods to be duly appraised and, strange to say, their appraisers also appraised those goods at about $102,000, although Mr. Homer had sold $45,000 of the same. Upon this last appraisement, these gentlemen say they put these goods into the corporation at a value of $95,187.35 (or $7,000 below the last appraisement), making a profit on their purchase of $35,000, which profit covered exactly the difference between the $40,000 in cash and the $75,000 stock. After the failure of the firm of Ripley & Bronson, in July, 1893, Mr. Ripley approached Mr. Kaime, with the idea of buying the Ripley & Bronson stock of goods, to start a new supply company. Mr. Kaime was willing to invest in it, to secure a good position for his prospective son-in-law, Mr. Geo. F. Detrick, whom he desired to

put in charge of some business. They agreed to raise one-half thereof. Mr. Ripley had some difficulty to raise this amount, as he was financially embarrassed, but finally did raise $14,000 and Mr. Kaime agreed to put in $26,000. This agreement was made in contemplation of the formation of a corporation supply company, which was to be formed by and between Kaime, Ripley and Detrick. They then undertook to buy the stock from Mr. Homer. Mr. Kaime emphatically declared that the bid for his stock should not exceed $60,000. After the purchase the corporation was formed, and the stock of goods bought from Mr. Homer was purchased by the corporation from Kaime, Ripley and Detrick at the price of $95,000. Before and during these transactions, Messrs. Kaime and Ripley took legal advice concerning their rights, etc., and they were duly advised by eminent counsel that they could put the stock which they might or would purchase from Mr. Homer, as receiver of the Ripley & Bronson Company, into the supply company which they then expected to incorporate, at its full market value, regardless of the cost price, and could thus secure a handsome profit, if they could purchase said stock cheap or much below the market value.

"Did they buy the stock much below the fair market value when they paid $60,000 for it? Was that stock worth $95,000 at a fair and full market value, or was it worth less? If these incorporators overvalued their stock of goods, then their full-paid, non-assessable stock of the corporation is illegal and fraudulent in law to the extent of this overvaluation. Mr. Kaime is the only defendant now, who is a stockholder, and he has already lost over $40,000 in the deal, as his counsel aver. That, of course, does not shield him from liability, but he should be treated in this proceeding, the same being in equity, with the utmost fairness. I can not find from the evidence that the stock purchased from  Mr. Homer, as the Ripley &

Bronson stock, was worth $95,000 or $100,000. Mr. Homer and several others state that the stock purchased by Kaime, Ripley and Detrick from him was probably, and about of the market value of $77,000 or $78,000. I have carefully gone over the evidence and calculated and recalculated the items given, and I think that the very best valuation to which the defendants, or rather the original incorporators, are entitled, is the sum of $77,000, or, as I put it, a profit of $17,000, which would make the actual amount paid on stock $57,000 instead of $40,000 as claimed on the one hand and $75,000 as claimed on the other. This leaves $24 due and unpaid on each share of stock, or the amount of $12,600 due and unpaid on the defendant Kaime's 525 shares of stock, to which the plaintiffs are entitled.''

The logical result of this finding is that the stock held by defendant was fraudulently issued as full-paid, when really it was unpaid to the amount of twenty-four dollars per share, and that the merchandise claimed by defendant Kaime to be worth $95,000 was overvalued to the extent of $18,000.

This finding defendant earnestly insists is contrary to the evidence, and the weight of the evidence, and that this court should review the finding of facts. The rule upon this question as established by this court in equity cases is, that where the witnesses testify orally we will defer somewhat to the finding of the chancellor (Benne v. Schnecko, 100 Mo. 250, authorities cited, and subsequent cases), but will consider the case ''for the most part, as if it originated here and was to be heard for the first time.'' [Lins v. Lenhardt, 127 Mo. 271; Robertson v. Shepherd, 165 Mo. 360.]

The record discloses that the firm of Ripley & Bronson, wholesale jobbers of plumbers' supplies, failed in 1893, and made an assignment for the benefit of their creditors to W. B. Homer, assignee. The

assigned stock of merchandise was duly appraised at
$102,000. The assignee employed salesmen and car-
ried on the business under orders of the court from
June to December, of that year, during which time he
purchased about $3,300 worth of goods, so as to be able
to fill orders, and sold during that period at private
sale $45,000 worth of goods. After selling this amount
of goods in the ordinary way out of the stock in his·
hands, the assignee sold the residue for $60,187.35.
This sale was to George F. Detrick, and was approved
by the court. These goods, while bought in the name
of Detrick, were in fact bought for all the promoters
and original stockholders of the corporation, who
thereafter sold the goods to the corporation for
$95,000 upon its organization, which was, the court
found, $18,000 more than their value.

There was much conflict in the testimony of the
witnesses with respect to the value of the stock of
goods at the time the promoters purchased it and the
sale of*the goods to the corporation; therefore, we
must, under the circumstances, defer to the finding of
the trial court who saw the witnesses upon the stand,
heard them testify, and was, therefore, much better
prepared to judge of their credibility and the weight
to which their testimony is entitled than we are.

It is conceded by counsel for defendant that prop-
erty taken by a corporation in payment of its capital
stock must be a fair and just equivalent in value to
the corporation to the par value of -the stock issued
therefor. [Liebke v. Knapp, 79 Mo. 24; Garrett v.
Mining Co., 113 Mo. 330; Van Cleve v. Berkey, 143
Mo. 109.] This being conceded to be the law, it fol-
lows that as the stock of goods was sold to the cor-
poration by said promoters for seventeen or eighteen
thousand dollars more than its fair and full market
value, then the full-paid, non-assessable stock of
the corporation is illegal and fraudulent in law to the
extent of its overvaluation.

While property may be taken in payment of the capital stock of a corporation, it must be taken at a fair, just, lawful, bona fide valuation. The owners of such property or subscribers to such stock can not put in their property at any valuation they may put upon it, but the corporation must receive, if in property, what it is reasonably worth in money. Nor does it make any difference that the corporators did not intend any fraud on the creditors of the corporation. [Van Cleve v. Berkey, supra.]

While the answer alleges that plaintiffs contracted the alleged debts with the Detrick Supply Company after they, and each of them, had been fully informed of all the facts relating to the forming of said corporation and relating to the payment of the stock subscribed for said corporation, and that the said plaintiffs are thereby estopped from making any claim against this defendant, this defense does not seem to be relied upon by defendant. Our conclusion is that the judgment should be affirmed. It is so ordered. All of this Division concur.