BENNE, *Appellant*, v. SCHNECKO *et al.*

1. **Husband and Wife**: HER PERSONAL PROPERTY PRIOR TO ACT OF 1875. Prior to the married woman's act of 1875 (R. S. 1879, sec. 3296), the husband acquired, *jure mariti*, the title to all the wife's personal property in possession.

2. **Statute Law of Sister State**: EVIDENCE. Where the statute law of a sister state is not shown in evidence the common law will be presumed to prevail.

Benne v. Schnecko.

3. **Fraudulent Conveyance:** BADGES OF FRAUD. A false recital in a deed by a debtor, of the actual value of the land, and a transfer by him to his wife's trustee of *all* his property, are badges of fraud.

4. ——: SETTLEMENT BY HUSBAND ON WIFE. While a husband may make a valid settlement upon his wife for a valuable consideration, such transfer as against his creditors will be watched with jealousy and the payment of the consideration must be clearly established.

5. ——: FRAUDULENT PURCHASE AT EXECUTION SALE. A purchase of land by the wife under a judgment and execution against her husband will be deemed fraudulent if made in furtherance of a prior fraud.

6. **Surety:** ASSIGNMENT OF JUDGMENT AGAINST PRINCIPAL. Sureties paying a judgment against their principal are entitled to an assignment of such judgment with all the rights and liens which attached to it in the hands of the creditor.

7. **Practice:** DEFECT OF PARTY, OBJECTIONS FOR. Objection because of plaintiff's incapacity to sue is waived, unless made by demurrer or answer.

8. **Practice in Supreme Court:** EQUITY CASE: FINDINGS OF CHANCELLOR. While the supreme court in equity cases where the witnesses have testified orally will defer somewhat to the findings of the chancellor, yet it will not be concluded by such findings.

9. ——: ——: ——. The supreme court will exercise a supervisory control over the findings of the chancellor in an equity case and will reverse them in a proper case.

*Appeal from St. Louis County Circuit Court.*—HON. W. W. EDWARDS, Judge.

REVERSED AND REMANDED.

*J. W. McElhinney* for appellant.

(1) The deed to Mrs. Schnecko's trustee was fraudulent, because there was actual fraud. Bump on Fraud. Conv., pp. 31, 56, 306, 311; *Besson v. Eveland*, 26 N. J. Eq. 468; *Humes v. Scruggs*, 94 U. S. 22. Under pretense of paying a debt, the law will not permit a debtor to assign more property than is reasonably sufficient for that purpose, to the prejudice of creditors.

| | |
|---|---|
| 100 | 250 |
| 76a | 642 |
| 77a | 529 |
| 100 | 250 |
| 153 | 16 |
| 81a | 140 |
| 81a | 611 |
| 100 | 250 |
| f160 | 390 |
| 160 | 528 |
| 100 | 250 |
| 165 | 375 |
| 100 | 250 |
| 168 | 4513 |
| 92a | 9357 |
| 100 | 250 |
| 169 | 9135 |
| 100 | 250 |
| 170 | 8707 |
| 173 | 8558 |
| 99a | 2542 |

*Kuykendall v. McDonald*, 15 Mo. 416, 420; *Potter v. McDowell*, 31 Mo. 62, 75; *Mc Veagh v. Baxter*, 82 Mo. 518; *Robinson v. Stewart*, 10 N. Y. 189, 195. And such a conveyance, when the grantor is indebted, is evidence of an intention to defraud. *Butler v. Stoddard*, 7 Paige, 163, 165; *Bullett v. Worthington*, 3 Md. Ch. 99. (2) But if there were no intentions to defraud the conveyance was voluntary and void as against an existing creditor. *Terry v. Wilson*, 63 Mo. 493; Bump, 307, 311. It cannot be presumed that the money obtained from the lots sold in Memphis was the wife's separate estate. *Sloan v. Terry*, 78 Mo. 623; *Tillman v. Tillman*, 50 Mo. 40. Voluntary transfers as against existing debts are constructively fraudulent whether fraud was intended or not. *Potter v. McDowell*, 31 Mo. 62, 69; *Lionberger v. Baker*, 88 Mo. 447, 453; *White v. McPheeters*, 75 Mo. 286, 294; *Patten v. Casey*, 57 Mo. 118; *Bohannon v. Combs*, 79 Mo. 305, 312. And, even if any of this money appropriated by the husband were a good consideration, the transfer would be voluntary to the extent of the excess of the property conveyed over the amount of the consideration, and to that extent void. Bump, Fraud. Conv., p. 294; *Bullett v. Worthington*, 3 Md. Ch. 99; *Herschfeldt v. George*, 6 Mich. 456; *Allen v. Marchand*, 78 Ky. 105. (3) The purchase at the sheriff's sale was likewise fraudulent and void. It was in furtherance of the original fraudulent scheme. Bump on Fraud. Conv., pp. 261, 263; *Dallam v. Renshaw*, 26 Mo. 533. The creditor has the right to proceed to set aside the fraudulent conveyance before sale under execution so that he or the purchaser may know what is sold. *Bobb v. Woodward*, 50 Mo. 95; *Lionberger v. Baker*, 88 Mo. 447; *Zoll v. Soper*, 75 Mo. 460; *Dunnica v. McCoy*, 24 Mo. 167. (4) The sureties on the payment of the judgment had a right to take an assignment to a third party as their trustee to retain the lien. Brandt on Sureties, sec. 272; *Hanner v.*

*Douglas*, 4 Jones (N. C.) Eq. 262; *Copas v. Middleton*, 1 Turn. & Russ. 224; *Fernold v. Bank*, 44 Mo. 336; *Berthold v. Berthold*, 46 Mo. 557; Bispham's Equity, sec. 366. (5) The trustee could properly bring the suit in his own name. *Rogers v. Gosnell*, 51 Mo. 466; *Wright v. Tinsley*, 30 Mo. 389; R. S. 1879, sec. 3463. Besides defect in the parties could only be taken by demurrer, or answer. *Rogers v. Tucker*, 94 Mo. 346; *Pike v. Martindale*, 91 Mo. 268; *St. Louis v. Anthony*, 73 Mo. 431; *Thompson v. Railroad*, 80 Mo. 521.

*M. F. Taylor* and *R. L. McLaran* for respondents.

(1) Contracts or agreements between husband and wife, in regard to the disposition of the wife's property, acquired prior to the marriage, are valid, and will be upheld. *Tennison v. Tennison*, 46 Mo. 77; *Tillman v. Est. of Tillman*, 50 Mo. 40; *Sloan v. Terry*, 73 Mo. 626. (2) The conveyance was not fraudulent, and there was no intent to hinder or delay Bittner in the collection of his debt. Schnecko says he had arranged with Benne for the payment of this note. A court of equity will, in order to ascertain whether fraud existed, look into all the circumstances surrounding the whole transaction to see if it is consistent with fairness and honesty, and fraud will not be presumed when all the facts consist as well with honesty and fair dealing as they do with an intention to defraud. *Dallam v. Renshaw*, 26 Mo. 553; *Rumbolds v. Parr*, 51 Mo. 592; *Henderson v. Henderson*, 55 Mo. 555. (3) The agreement of Mrs. Schnecko to loan the money derived from the sale of the house and lot in Memphis, in 1865, to her husband, was valid, because it was a chose in action, and, therefore, the conveyance to Mrs. Schnecko was for a valuable consideration. *Tennison v. Tennison, supra; Tillman v. Tillman, supra; Sloan v. Terry, supra.* (4) The loan of five thousand dollars ($5,000) for sixteen years was a sufficient consideration for the property

conveyed, and, if there had been no consideration, its conveyance was good as to subsequent creditors. *Babcock v. Eckler*, 24 N. Y. 626; *Dygert v. Schneider*, 34 N. Y. 648; *Holden v. Branham*, 63 Mo. 74. (5) Benne, having agreed to pay the Bittner note and then settle up with Schnecko, cannot maintain this action until such settlement is had. He is only entitled to the lien obtained by Bittner's judgment till he proves an existing indebtedness. *Harrison v. Phillips*, 46 Mo. 520; *Berthold v. Berthold*, 46 Mo. 557. (6) In an equity case, where the trial court has the witnesses personally before it, and there is sufficient evidence to sustain its finding of facts, the supreme court will not interfere and reverse such findings, unless it is shown it should have been otherwise. *Erskine v. Loewenstein*, 82 Mo. 301; *Judy v. Bank*, 81 Mo. 404; *Parke v. Thompson*, 81 Mo. 565; *Royle v. Jones*, 78 Mo. 403; *Chapman v. McIlwrath*, 77 Mo. 39.

SHERWOOD, J.—This is a proceeding in equity to set aside, on the ground of fraud against creditors, two conveyances of about thirty-eight acres of land in St. Louis county, one of them dated in 1881, conveying the land in controversy to Keoeser, as trustee for Mary Schnecko, the wife of the grantor. This deed which expressed a consideration of twelve thousand dollars not only conveyed the land in suit, but also everything the grantor, Richard C. Schnecko, possessed in the world, as he testifies, in the way of personal property, horses, mules, cows, hogs, wagons, plows, farming implements and machinery, fifty tons of hay and all the household and kitchen furniture in the house occupied by him, on the premises.

The testimony showed that the land thus conveyed was only worth five thousand to six thousand dollars; there was no dispute on this point. The property was also incumbered by a deed of trust, securing a debt of twenty-five hundred dollars.

In 1879, Schnecko became a principal in a note for seven hundred dollars to Jacob Bittner, with Herman and William Benne as sureties. Judgment by default was recovered on this note November 19, 1883, and on the same day, one Holthaus also recovered judgment against Schnecko, for $114.60, by "mutual consent," with a stay of execution for sixty days. Matters were so managed, however, between Schnecko, the husband, his wife and their attorney, that Bittner's judgment was tied up with a motion made by Schnecko, to set aside the judgment by default, which was filed on the twenty-third day of November, 1883, and not determined until December 27, of that year, but two days before the sale under the Holthaus judgment occurred.

By "mutual consent" also, the stay of execution on the Holthaus judgment was set aside, and on the same day, December 7, 1883, execution issued on that judgment, and the sale was made thereunder, on the twenty-ninth day of December, 1883, but two days after the motion to set aside the judgment by default, taken against Schnecko, and in favor of Bittner, had been overruled. At this sale Mrs. Schnecko became the purchaser of the land for one hundred and forty-five dollars, through her attorney who had advised this course. The deed made by the sheriff in consummation of this sale was also asked to be set aside as fraudulent.

It is in evidence, that when the motion to set aside the judgment by default, in favor of Bittner, and against Schnecko, came on to be heard, the court spoke about its insufficiency in that it failed to set up any meritorious defense, whereupon the attorney for the husband and wife remarked: "It might as well be overruled; it has accomplished its purpose."

The claim is made on the part of the wife, Mrs. Schnecko, that she was a widow in 1865, in Kentucky; that her first husband left her three thousand dollars and a house and lot in Memphis, Tennessee, which sum her present husband borrowed, and after that, at his

instance, she sold the house and lot for two thousand dollars, and loaned him the proceeds; this latter transaction was in the spring of 1865. No note or memorandum was taken for these loans, nor does it appear that the wife had any separate estate.

In 1881, it was at her request, that the husband was induced to make her the conveyance mentioned, in order, as she says, to repay her for the money loaned some fifteen years before, and which was never before demanded, either principal or interest. Where this loan occurred does not appear; whether in Kentucky, Tennessee or Missouri. If in the last-named state, then the time specified being before the act of 1875 took effect (see R. S. 1879, sec. 3296), the *status* of the husband as towards the wife was as at common law, and he acquired, *jure mariti*, the title to all of her personal property in possession. *Woodford v. Stephens*, 51 Mo. 443; *Alexander v. Lydick*, 80 Mo. 341; *Modrell v. Riddle*, 82 Mo. 31. So that, according to the showing made, the wife had no money to loan to her husband, because it belonged to him already. Nor would the case be altered for the better for Mrs. Schnecko, were the supposition indulged that the alleged loan occurred in either Kentucky or Tennessee, because, the statute law of those states as to married women not being established by the evidence, the presumption must be indulged that the common law prevailed, and that the husband became entitled accordingly. *Meyer v. McCabe*, 73 Mo. 236.

But apart from these considerations, there is no attempt made to account for, or to explain, the discrepancy between the actual value of the land, and the price mentioned in the deed. This false recital was a badge of fraud; and it was also another badge that the debtor transferred, by the deed made to his wife's trustee, *all* of his property. Honest transfers do not commonly occur in this way. Indeed, anything out of the usual course of business is a sign of fraud. *Bump.*

Fraud. Conveyances, pp. 34, 42, 51; *Baldwin v. Whitcomb*, 71 Mo. 651.

There is no doubt but what a husband may make a valid settlement upon his wife, for a valuable consideration. "Such settlements, however, are always watched with considerable jealousy, on account of the relative situation of the parties, and the convenient cover they afford to a debtor to protect his property and impose upon his creditors, and the payment of a valuable consideration must be made out by proof of the most unquestionable character." Bump. Fraud. Conv. [3 Ed.] 306; *Besson v. Eveland*, 26 N. J. Eq. 468; *Humes v. Scruggs*, 94 U. S. 22.

But the sale under the Holthaus execution would undoubtedly have given Mrs. Schnecko a good title to the land, had it not been the fact that this sale was but in furtherance of, and tainted with, the original fraud already developed in the foregoing remarks. And the sureties having paid the debt of their principal, Schnecko, became entitled to an assignment of the judgment Bittner had recovered. Such payment did not extinguish the debt, at least in equity. Mere payment of the debt by the surety is considered to operate as an assignment of it to the party paying, with all the rights and liens which attached to it as incidents in the hands of the creditor. Bispham's Prin. Eq., secs. 335, 336; Brandt on Suretyship, secs. 269, 270, 271; *Furnold v. Bank*, 44 Mo. 336; *Berthold v. Berthold*, 46 Mo. 557.

Nor is there any doubt that this proceeding was properly instituted in the name of William Benne, to whom the judgment was assigned for the benefit of himself and the other surety. But, if the suit were not properly brought, there was no objection taken either by demurrer or answer as to plaintiff's capacity to sue, and so any such objection, even if existing, was waived.

It is proper to remark just here, that on numerous occasions we have said that in equity cases where the

witnesses testify orally we will defer somewhat to the findings of the chancellor. *Chouteau v. Allen*, 70 Mo. 336; *Erskine v. Loewenstein*, 82 Mo. 309; *Springer v. Kleinsorge*, 83 Mo. 159; *Berry v. Hartzell*, 91 Mo. 138; *Bushong v. Taylor*, 82 Mo. 666; *Mathias v. O'Neil*, 94 Mo. 530.

But by such remarks we are not to be understood as meaning that we are concluded by the finding of facts by the court below; far from it. Such remarks do not mean that we have abdicated our supervisory control over questions of fact in equity causes; they only mean that when there is conflict of testimony, or where the testimony is evenly balanced and the finding of the chancellor appears to be correct, then we will so far defer to his finding as to sanction it by our affirmance; "that and nothing more."

The cases above mentioned have no applicability to the case at bar. It is no case for nicely balancing probabilities as to whether or not the deeds in question were fraudulent, since the evidence establishes this beyond peradventure.

For the reasons given, we reverse the judgment and remand the cause with directions to enter a decree as prayed in the petition. All concur, but BARCLAY, J., who dissents.