BROWN *et al.* v. FICKLE *et al.*, *Appellants.*

### Division Two, October 7, 1896.

1. **Supreme Court Practice**: EQUITY CASE: FINDING OF FACTS. The supreme court will, in a proper case, review the finding of facts of the trial court in an equity proceeding.

2. **Equity**: FRAUD: SETTING ASIDE DEED. A court of equity can set aside a deed for fraud, or when obtained by undue influence; but, in so doing, it does not act arbitrarily but upon proofs made and according to well defined principles of law.

3. ——: ——: ——: BURDEN OF PROOF. The burden of proof in such case is to establish fraud, and the particular fraud charged in the petition.

4. ——: ——: ——: REVERSING DECREE OF TRIAL COURT. Where in an action to set aside a deed for fraud, the evidence to establish such fraud is unsatisfactory and the facts and circumstances are all consistent with good faith, a decree for plaintiff will be reversed on appeal.

*Appeal from Platte Circuit Court.*—HON. W. S. HERNDON, Judge.

REVERSED.

*N. B. Anderson* and *George W. Day* for appellants.

(1) While the reviewing court will defer somewhat to the findings of the trial court, it will not be concluded by them, but will review the whole case, and when proper, reverse. *Benne v. Schnecko*, 100 Mo. 250, where the principles governing the supervising control of the supreme court over the findings of the trial court are lucidly set forth. *McElroy v. Maxwell*, 101 Mo. 295. (2) While courts of equity do not restrict themselves to the same rigid rules as courts of law do in the investigation of fraud, yet it is equally a

rule in courts of law and courts of equity that fraud is not to be presumed, but it must be established by proofs. 1 Story's Eq. Jur. [Bigelow's Ed.] 202. And while courts of equity may deduce fraud from circumstances affording strong presumption, yet it is submitted that the true rule is, as stated by Bigelow, not that a chancellor may find fraud on less evidence than a jury could in the same case, but that such evidence should be required by all courts as to overcome the presumption of innocence. *Marksbury v. Taylor,* 10 Bush, 519. (3) The evidence of fraud should be clear and convincing. *Bryan v. Hitchcock,* 43 Mo. 527; *Lavasser v. Washburn,* 80 Wis. 200; *Torrance v. Bolton,* L. R. 8 Ch. 118. (4) It is a well established rule that the law will presume in favor of honesty and against fraud. Broom's Legal Maxims [8 Ed.], 947. The burden of proof is upon the plaintiff who seeks a cancellation of the deed. *Taylor v. Crockett,* 123 Mo. 300. (5) No evidence was offered by the plaintiffs to show that Matthias Fickle ever misrepresented to his mother the nature or the extent of her title to the land. (6) Where the evidence in a case only tends to cast suspicion on a transaction, or if it is as consistent with an honest as with a dishonest purpose, the finding must be against the alleged fraud. *Ridge v. Greenwald,* 53 Mo. App. 479.

*Wilson & Wilson* and *J. W. Coburn* for respondents.

(1) Even if it was error to admit the testimony of Joel Brink, it was immaterial error, as the same statement made by him was also made by numerous other witnesses and never contradicted. But it was not error as he was a substantial party to the suit, as he had one child living by his wife Armilda Brink, one of

the children of Aurena Fickle, the patentee of the land in controversy, and at the date of the suit and trial had a curtesy in the land. A husband is a competent witness in litigation involving title to his wife's general property to which he is made a party. *McKee v. Spiro*, 107 Mo. 452; *Brownlee v. Fenwick*, 103 Mo. 420. (2) Defendant was not a competent witness as he was a party to the deed made by Wyley Brown and his wife Aurena Brown. The rule that where two parties make a contract with a third party and one of the first parties dies the third party is a competent witness does not apply here since Mrs. Aurena Brown, the substantial party to the contract, was dead. *Messimer v. McCray*, 113 Mo. 382; *Nugent v. Curran*, 77 Mo. 323. (3) There seems, at first, to have been a mistake among all the parties as to their interests in the land. Defendant supposed he and his two sisters and mother had an undivided fourth each in the land and bought out the interests of his two sisters, after which he evidently discovered that his mother owned it all, and then leaving her laboring under the mistake he got her to sell him her supposed interest of one fourth and in the deed from her, which he had drawn up, he fraudulently inserted the whole one hundred acres instead of the twenty-five acres which he told her she was conveying. (4) The deed should be set aside whether obtained through mistake or fraud. *Summers v. Coleman*, 80 Mo. 488; *Sayer v. Devore*, 99 Mo. 437.

GANTT, P. J.—In the year 1838 Matthias Fickle, the father of the defendant Matthias Fickle, purchased the preemption right of one Case to the southwest quarter of section number nine (9), township 51, range 34, in Platte county, Missouri, and moved upon the same, and cleared and improved a portion thereof, but died before he obtained a patent thereto. At his death he

left surviving him his widow, Aurena Fickle, and two daughters, Frances and Amanda, and some months after his death a posthumous son, Matthias, the defendant, was born.

Because of outstanding debts due the estate, which she was unable to collect, his widow sold sixty acres of the land to David Gregg for $200 and with this money completed the payment to the government of the United States and received a patent to herself and her heirs for the whole quarter section, on the first day of May, 1846. Soon thereafter she conveyed the sixty acres to Gregg, leaving her the one hundred acres which is the bone of contention in this case.

About four years after the death of her husband, Mrs. Aurena Fickle married Wyley Brown, one of the plaintiffs and respondents herein. Of this last marriage there were born four other children, three daughters and a son, who are also plaintiffs herein. After this last marriage Mrs. Brown and her husband and the Fickle children continued to reside as one family on the one hundred acres, and after the birth of the Brown children they also were reared on the same place.

The evidence tends strongly to prove that Wyley Brown was a poor manager, and was very intemperate in his habits, and the burden of rearing the family largely fell upon his wife and the children. The farm was in the hills and yielded a scant return. Matthias Fickle, the defendant, under these adverse circumstances, developed a character for thrift and industry and the strictest integrity.

About the year 1878 Wyley Brown declared the farm was too poor to support his family, and moved to Kansas.

Young Matthias Fickle having come to the estate of a man, married and leased the old homestead from his mother. From time to time Mrs. Brown visited

her son and other relatives in Platte county. In the years 1872 and 1874, Matthias Fickle bought the expectancies of his two sisters of the whole blood in the hundred acres and gave each of them $200 therefor, and in 1885, his mother and his stepfather Brown made him a deed to the one hundred acres.

The purpose and object of this suit is to set aside this deed from his mother to him, on the ground that it was obtained by fraud. It is averred that Mrs. Fickle, who obtained the patent to this land, was informed, and, by mistake believed, that the patent conveyed the land to her and her bodily heirs, by her first husband begotten, and that she only had a child's part therein, and she did not know what estate she was conveying to her son by her deed in which her second husband Brown joined her, and that her son taking advantage of her ignorance fraudulently represented to her and her husband that her interest in the land was only a child's part of twenty-five acres, and thus procured their consent to deed it to him and then fraudulently inserted in the deed the whole hundred acres, whereas they thought they were only conveying twenty-five acres, or a child's part.

I. Upon appeals from the decrees of the circuit court in chancery cases, this court is not bound by the findings of the circuit court. When the finding of the circuit court is predicated principally upon the oral testimony of witnesses before it, we have generally deferred to its findings, but it was pointed out by Judge SHERWOOD in *Benne v. Schnecko*, that our practice in this regard did not mean that we had abdicated our supervisory control over questions of fact in equity causes, but only meant that when there is a conflict of testimony or where the testimony was evenly balanced and the finding therein seemed to be correct we would so far defer to the chancellor's judgment as to affirm it,

but our reports contain many decisions in which we have reviewed the findings of the chancellor and reversed his decrees. *Benne v. Schnecko*, 100 Mo. 250; *McElroy v. Maxwell*, 101 Mo. 295; *Hamilton v. Armstrong*, 120 Mo. 597.

In this case we have fully read every line and word of the evidence, and have been forced to the conclusion that the learned circuit judge erred in setting aside defendants' deed to the land in controversy. A court of equity has power to set aside a deed for fraud, or when obtained by undue influence, but in so doing they do not act arbitrarily, but base their decrees upon proofs made and according to well defined principles. The burden is upon the plaintiffs in this case to establish fraud, and the fraud which they have charged in their bill.

It is assumed by counsel for plaintiff and found by the circuit court "that Mrs. Fickle was informed and by mistake believed that the patent to her land recited that said lands were granted to her and *to her bodily heirs by her first husband*, Matthias Fickle, and that she and her said children owned said lands equally share and share alike." We have searched this record to find a single word of evidence to show that any one ever told or advised Mrs. Fickle that such was the language or legal effect of the patent to her for this land. On the contrary, her act in leasing the whole tract to defendant, her conduct in separately selling and conveying to Gregg sixty acres of the land without the children or their guardians joining therein; her refusal to sell it when importuned by her second husband, Brown, to do so, all tend to show that she fully understood that the legal title to the whole tract was in her.

In addition to this the evidence shows that she was a woman of clear, strong intellect and in good health

for one of her age.   After she had made the deed she had evidently been importuned by Brown and his children to renounce it and seek to set it aside, but she not only refused herself to disavow it, but sought on her death bed to dissuade her children by Brown from attacking it after her death.

Over and against this unequivocal testimony, plaintiffs introduce the evidence of Wyley Brown of a conversation of defendant with him, out of the presence and hearing of Mrs. Brown, in which he says defendant asserted his mother only had twenty-five acres, and the statements of Armilda Brink and Joel Brink her husband, as to statements of the defendant out of the presence of his mother, both interested parties to this action, and the deeds of Mrs. Boydstun and Mrs. Reynolds.   As to these deeds, the explanation is easily made.   Mrs. Brown always recognized that this land was purchased by her first husband Matthias Fickle from Case.   After his death she took a portion of it to pay off the balance due the government and obtain the patent.

She again and again expressed her determination to let Matthias, her son, have it.   It is not hard to discern the motives that prompted the mother's desire that her son, Matthias, should own this land.   His father's money alone had been expended in acquiring it.   This son had been dutiful and had proven the mainstay of the family.   Moreover her second husband had disposed of his land, and her children by Fickle received nothing from it.   She always alluded to the Fickle children as her children, as distinguished from the Brown children.   Notwithstanding she owned the whole tract, as a matter of sentiment she would say she had a child's part.   Her daughters by Fickle understood their mother would not sell the place, and hence they anticipated that at her death they would get a

third each in the land.   With her knowledge and consent they sold their expectancies to their brother.   We attach little importance to the form of these deeds, as throwing any light upon Mrs. Fickle's knowledge of the character of her estate in the land.

To establish a mistake in an instrument as simple as the patent to her, the evidence should be more cogent than any appearing in this record.

II.   The evidence of fraud is equally shadowy and unsatisfying.  There is no evidence that Matthias Fickle ever misled his mother as to her interest in this land. Wyley Brown, though skillfully led by his counsel, admitted that he never heard Matthias tell her anything which would amount to a misrepresentation.

But if it be urged that Mrs. Fickle or Brown and Wyley Brown were ignorant and could not read or write, let us examine the circumstances that led up to and culminated in their making the deed.   It is a most pregnant circumstance that this deed was executed nine years before it was challenged.

Mrs. Brown, though advised by her daughter, Mrs. Brink, that she had conveyed the whole tract and not a fourth interest in it, could not be induced to retract it, and brought no suit to avoid it.   Wyley Brown and his wife never received rent from the time the deed was made, and it is plain that Mrs. Brown and he thought they had conveyed all their interest in the land.   Their conduct is inexplicable on any other theory.   To sustain the charge of fraud, it is true, Wyley Brown testifies after nine years that the deed was never read to him and indeed so dense was his ignorance of the transaction that his counsel seemed to have much difficulty in making his testimony even relevant to the case, and he is seriously impeached by Noland, who testified that Brown told him about two years after the execution of

the deed "that he had a hell of a good notion not to sign it," and by Mrs. Brink, an impartial and disinterested witness, his sister-in-law, who was visiting him at the time it was made. She testifies that Matthias had accompanied his mother home from Missouri to Kansas. That she, Mrs. Brink, had also gone with them. She says that after their arrival in Kansas Mrs. Aurena Brown asked Wyley Brown to go to Olathe with her to execute the deed and he swore he would not do it, but after dinner on the third day he came in and said to Mrs. Brown, "Well, Aurena, get on your duds, I will go to Olathe and sign that deed if nothing else will do you." She says that Mrs. Brown, Wyley Brown, and the defendant Matthias, and the witness were in the house and Matthias read the deed over to them.

She also heard Wyley Brown say to Matthias the morning he left, "If you will burn up that deed I will give you $10." In addition to this is the absolute failure of any proof that the slightest effort was made to prevent the probate judge from fully advising them of the nature of the deed. The fact that they drove seven miles on no other mission than to execute this deed; that the whole family was advised of Matthias' intention to purchase, and of his mother's desire to sell; these and many other circumstances clearly demonstrate that Wyley Brown was fully cognizant of the execution of the deed at the time.

But again, the allegation that Matthias Fickle went to Kansas to induce his mother to convey him the land is contradicted by all the facts. The reverse is true, however. Mrs. Aurena Brown in 1885 came to Missouri with the avowed purpose of selling the place to Matthias. Andrew Higgins and his wife, and W. R. Higgins rode from Lenexa in Johnson county, Kansas, with her to Platte county. They were her old Missouri friends and neighbors. When asked by them if she

was going on a visit to Platte, she answered "she was not coming on a visit this time; that she was coming over on business; that her business was to deed the place to Matthias; she thought he had a better right to it than anyone else, and she wanted to make him a title to it."

Substantially to the same effect was her statement to Absalom Brink after she reached Platte county. She consulted her sister and brother-in-law about it before she went to her son's house.

The record is so utterly barren of the usual badges of fraud and so consistent with the natural impulses of a mother to see her son in possession of his father's homestead and the proof so strong that the son was in every way worthy of the affection of his mother, that had she given it to him outright after he had provided for his sisters, a court of equity would have sustained the gift; much more will it not suffer his purchase made so openly and fairly to be set aside upon a mere suspicion.

Finding no evidence of fraud or overreaching in the case, we reverse the judgment and direct the circuit court of Platte county to dismiss the bill. SHERWOOD and BURGESS, JJ., concur.