KATE MILLER et al., Appellants, v. ARA E. McCALEB et al.

*Division One, December 24, 1907.*

1. **FINDING OF FACTS: Equity Case.** A refusal of the trial court in an equity case to make a separate finding of facts, upon proper request, is not reversible error. Even if the statute (Revised Statutes 1899, sec. 695) applies to equity cases, the chancellor's finding of facts is in no sense binding on the appellate court, and for that reason no harm can come to appellant by reason of a refusal to make such finding.

2. **DEED: Delivery: Acceptance: Record.** There can be no delivery of a deed to an adult grantee without an acceptance thereof by the grantee. Nor does the recording of a deed to such grantee, unauthorized by the grantee, constitute a delivery without such acceptance.

3. ———: ———: ———: **To Wife and Husband's Heirs.** The grantees named in the deed were "Ara E. McCaleb (wife of Ethelbert A. McCaleb) and the lawful heirs of the said Ethelbert A. McCaleb." That deed was recorded, and that is the deed sued on. On the same day there was another deed from the same grantors conveying the same land to "Ara E. McCaleb

and Ethelbert A. McCaleb, her husband." This deed was in the handwriting of the justice of the peace, who took the acknowledgment to both. It remained in the house of the said Ethelbert and Ara, and was never recorded. She testified that she knew nothing of the existence of the other deed until after Ethelbert's death, and knew nothing of the recording of either, and the clear evidence is that the first intention of herself and her husband was to make her the sole grantee, and after the first deed was drawn it was concluded to make both grantees, and the second deed was drawn in accordance with that purpose. The names of the grantees in the first deed were written in by Ethelbert. *Held*, that, the evidence clearly showing that Ara never accepted the first deed, and that as it was recorded without her consent or knowledge, it was never delivered, and the children of Ethelbert by a former wife are not entitled to claim title thereunder.

Appeal from Dade Circuit Court.—*Hon. L. W. Shafer,* Judge.

AFFIRMED.

*Edwin Frieze* for appellants; *Sherwood & Young* of counsel.

(1)    Upon request made by plaintiffs that the lower court should state in writing the conclusions of fact found separately from the conclusions of law, such request should have been granted. On this subject the statute is entirely plain and it is mandatory; it applies by its express terms to cases in equity as well as to cases at law.    Cochran v. Thomas, 131 Mo. 268; Lawyers' Co-op. Pub. Co. v. Gordon, 173 Mo. 152; Blount v. Spratt, 113 Mo. 53.    The lower court therefore erred in denying plaintiffs' request.    (2)    Under the deed the words "and the lawful heirs of the said Ethelbert A. McCaleb," therein contained, conveyed an equity at least, to the then four living children of said Ethelbert A. McCaleb; and they took as tenants in common with their step-mother, Ara E. McCaleb, and she took the legal title to the land for

her own benefit, and as trustee for the then living children of Ethelbert A. McCaleb. Bailey v. Willis, 56 Tex. 212; Jackson v. Sisson, 2 Johns. 321; Arthur v. Weston, 22 Mo. 382; Beoman v. Whitney, 20 Me. 420; Reinhard v. Va. Lead Min. Co., 107 Mo. 624; Benev. Soc. v. Murray, 145 Mo. 628; Huss v. Stephens, 51 Pa. St. 282; Tharp v. Yarbrough, 79 Mo. 382; Ennis v. Brown, 1 N. Y. App. Div. 22; Pfeiffer v. Rheinfrank, 2 N. Y. App. Div. 574; Waddell v. Waddell, 99 Mo. 338; Hamilton v. Pitcher, 53 Mo. 334. "Heirs" is used in the sense of "children" when the deed is to one and her minor heirs. Seymour v. Bowles, 172 Ill. 521; Heath v. Hewitt, 27 N. E. 961. (3) At the time the deed was executed, to-wit, in 1872, all of the personal property, etc., of a married woman at and during marriage became the property of her husband. Leete v. Bank, 115 Mo. 184. Aside from statutory provisions, presumptively the personal property of the wife is that of the husband. And upon marriage, prior to the Married Woman's Act of 1889 the husband became possessed of the wife's realty and entitled to its usufruct. (4) During the life of the husband the statute would not run against plaintiffs. Dyer v. Witler, 89 Mo. 81. (5) Under the law as it existed when the deed was executed, the exclusive possession of the farm was in the husband, and consequently his declarations about the title were evidence as part of the res gestae. 1 Glf. Evid. (14 Ed.), sec. 109. No other person being in possession, the declarations of such persons were without probative force. Meegan v. Gunsollis, 19 Mo. 417; Hunt v. Thompson, 61 Mo. 154; Meier v. Meier, 105 Mo. 431.

*C. F. Newman, Mason Talbutt* and *Edgar P. Mann* for respondents.

(1)   No one can be an heir of the living, and the grant in this case to "the lawful heirs of Ethel-

bert A. McCaleb,'' he being living, is void for uncertainty as to them, and respondent Ara E. McCaleb, specifically named in the deed as grantee, took the title. Hall v. Leonard, 1 Pick. 27; Winslow v. Winslow, 2 Ind. 8; Outland v. Bowen, 115 Ind. 150; Fountain v. Beckelheimer, 102 Ind. 76; Boone v. Moore, 14 Mo. 420; Brewster on Conveyances, art. 40, p. 50; Heath v. Hewitt (N. Y.), 13 L. R. A. 46.    (2)    The word ''children'' in its primary and natural sense is a word of purchase, but the word ''heirs'' is in its primary and natural sense a word of limitation and not of purchase.    Schoolmaker v. Sheely, 3 Denio 490; 4 Kent Com., 222; Broom's Legal Maxims, 521.    (3) The evidence shows that there was never a delivery of the recorded deed, purporting to convey this property to Ara E. McCaleb, wife of Ethelbert A. McCaleb, and the lawful heirs of Ethelbert A. McCaleb. Neither of the grantees knew of its existence, or assented to its terms or execution, or to its registry.    All were ignorant of its very existence in the shape in which it was recorded. If it be contended that since it was beneficial to the minor heirs of Ethelbert A. McCaleb, they are presumed to have assented to the delivery, the fact still remains that knowledge of its existence and assent to its terms and delivery on the part of Ara E. McCaleb, was necessary to make the delivery valid and the deed operate as a conveyance of the property. And that she had no such knowledge and gave no such assent.    Appleman v. Appleman, 140 Mo. 309; Powell v. Banks, 146 Mo. 620; Hall v. Hall, 107 Mo. 101; 3 Wash. Real Prop. (4 Ed.), 292.

GRAVES, J.—Action in partition, by petition in the usual form, with prayer for the partition of sixty acres of land in Dade county, and for account of rents and profits alleged to have been had and received by one of the defendants.    The plaintiffs, Kate Miller

and Lidia A. Forrest, and the defendants S. A. Mc-
Caleb and C. A. McCaleb, are children of Ethelbert
A. McCaleb, who died in the year 1901, and the only
answering defendant is Ara E. McCaleb, the second
wife and widow of the said Ethelbert A. McCaleb. The
four children of the said Ethelbert, made parties to
this action, are children by his first wife.    The de-
ceased, Ethelbert A. McCaleb, and the defendant Ara
E. McCaleb were married in 1871.    At the institu-
tion and trial of this suit there were two children of
the second marriage alive, but they were not made par-
ties.    They testify as witnesses, however.    The an-
swer of Ara E. McCaleb, the only answering defend-
ant, was a general denial.

Plaintiffs base their claim on the following deed:

"Know all men by these presents, That William
F. Dry and Emily J. Dry, of the county of Dade in
the State of Missouri, hath this day, for and in con-
sideration of the sum of six hundred and thirty dol-
lars, to the said William F. Dry and his wife Emily J.
Dry in hand paid by Ara E. McCaleb (wife of Ethel-
bert A. McCaleb) and the lawful heirs of the said
Ethelbert A. McCaleb, of the county of Lawrence in
the State of Missouri, granted, bargained and sold, and
by these presents do grant, bargain, sell and convey
unto the said Ara E. McCaleb and the lawful heirs of
the said Ethelbert A. McCaleb, the following tracts or
parcels of land situated in the county of Dade, in the
State of Missouri, that is to say:    The north half of
the east half of the southwest quarter and the north
half of the southeast quarter of the southwest quarter
of section 26, township 30, range 28; also the east half
of the north half of the northeast quarter of the south-
east quarter of section 33, township 30, range 27, con-
taining in all seventy acres more or less.

"To have and to hold, the premises hereby conveyed,
with all the rights, privileges and appurtenances there-

to belonging or in any wise appertaining unto the said parties of the second part, their heirs and assigns forever, and the said William F. Dry and Emily J. Dry, his wife, hereby covenanting to and with the parties of the second part, their heirs and assigns, for themselves, their heirs, executors and administrators, to warrant and defend the title of the premises hereby conveyed against the claim of any person whatsoever.

"In testimony whereof, we have hereunto subscribed our name and affixed our seals this 22nd day of April, in the Year of our Lord, one thousand, eight hundred and seventy-two.

"WILLIAM F. DRY, (seal)
EMILY J. DRY, (seal.)"

This deed was acknowledged before Wm. Van Horn, justice of the peace, on the date thereof. It was filed for record April 24, 1872, and duly recorded in book 16 at page 519 thereof of the deed records of said county. On the back of the original of this deed appears this endorsement:

"Warranty deed from William F. Dry and Emily J. Dry to Ara E. McCaleb.

"State of Missouri, County of Dade....ss. This deed was filed for record in my office on the 24th day of April, 1872, at the hour of......o'clock....M, and duly recorded in Book 16, page 519. No. Due. Paid fee $1.00.

"ARCH M. LONG."

The plaintiffs introduced the record of this deed and the answering defendant produced the original. There is no difference between the record of the deed and the original, nor of the certificates of acknowledgment and other endorsements thereon, except on the original appears a cancelled United States revenue stamp.

Defendant placed in evidence another deed identical in form except as hereinafter noted, of the same

date, acknowledged on the same date by the same jus-
tice of the peace, having the same grantors and convey-
ing the same land.    The only difference is in the names
of the grantees.    In this last-mentioned deed the gran-
tees are "Are E. McCaleb and Ethelbert A. McCaleb,
her husband," instead of "Ara E. McCaleb and the
lawful heirs of the said Ethelbert A. McCaleb," as in
the deed first fully set out hereinabove.    This deed
has endorsed on the back thereof, the following:

"Warranty Deed from William F. Dry and Emily
J. Dry to Ara E. McCaleb and Ethelbert A. McCaleb."

This deed has no revenue stamp and had not been
recorded.

Defendant also offered in evidence a mortgage
dated April 22, 1872, to secure two notes of $215 each;
in this mortgage the grantee is William F. Dry, and he
is also the payee in the two notes described therein,
and the land conveyed is the same involved in this
suit.    The notes are signed by Ethelbert A. McCaleb,
and he signs the mortgage with his wife, but the first
part of the mortgage reads:    "This indenture, made
and entered into this twenty-second day of April, A.
D. 1872, by and between Are E. McCaleb, wife of Eth-
elbert A. McCaleb, in the county of Lawrence and State
of Missouri of the first part, and William F. Dry of
the county of Dade, State of Missouri, of the second
part, witnesseth:"    This mortgage was likewise ac-
knowledged before Van Horn, justice of the peace.

Such is the documentary evidence in the case.

By oral proof it appears that about the time the
land was purchased from Dry, Mrs. McCaleb received
quite a sum of money from an estate, and there is tes-
timony tending to show that a part of this money went
into this land; that the four McCaleb children by the
first wife paid nothing on the land; that McCaleb and
wife, with these four children, then all minors, moved
and lived upon this land; that the children would leave

upon attaining their majority; that McCaleb lived there until his death in 1901; that after his death, his widow either occupied it in person or by her tenant up to the trial, and was occupying it by tenant at the trial; that one of the sons rented the land of the father and paid him rent.

Mrs. McCaleb testified about the making of the two deeds, but upon some points she is somewhat mixed and confused. As best we gather her testimony, it is to the effect that she understood that the deed which we first herein set out in full was made to her alone; that it was concluded to make one to both of them, and the second deed mentioned above was made; that she understood that this second deed was the conveyance and it was taken home and kept there, but not recorded; that she always claimed under this unrecorded deed; that she had no knowledge that McCaleb's heirs were parties to the first deed until told by Wheeler, the administrator of her husband's estate, and did not even know that it was yet in existence, until that time. On this last point she is corroborated by testimony tending to show that the words, "Ara E. McCaleb and the lawful heirs of the said Ethelbert A. McCaleb," wherever they appear in the first deed, were in the handwriting of Ethelbert A. McCaleb, whilst other portions were not.

The evidence is conflicting as might be expected upon what the father said about the title to the place, but the preponderance thereof is to the effect that he said the place belonged to defendant Ara E. McCaleb. At one time when making a mortgage in an attorney's office, he refused to put in the land in dispute. The scrivener was getting the land numbers from some abstract books, and when he called off the numbers of the land in dispute here, the deceased asked, "That the Dry land?" and being informed that it was he then

said, "I don't want to put that in; that belongs to the old woman."

It should also be stated that Mrs. McCaleb testified in cross-examination that the deed having her name endorsed on the back was the deed which she thought she claimed under, and this is the first deed we have hereinabove set out. On this point she was evidently confused.

Upon the conclusion of the evidence we find this in the record:

"At the close of the evidence plaintiff's counsel requested the court to state in writing the conclusions of fact found separately from the conclusions of law. Which request the court refused, stating that in equity cases the court was not required to so state its findings. To which ruling of the court, plaintiff then and there excepted."

And thereupon judgment was entered in this language:

"Kate Miller and Lydia A. Forrest, Plaintiffs, vs.
      Ara E. McCaleb, Samuel A. McCaleb and Clarence
      A. McCaleb, Defendants.

"Judgment vs. Plaintiff for costs and dismissing petition and finding that land is owned by Ara E. McCaleb.

"Now at this day comes the plaintiffs, Kate Miller and Lydia A. Forrest, by their attorneys, and also come the defendants, Ara E. McCaleb, Samuel A. McCaleb in person, and by their attorneys, and the defendant, Clarence A. McCaleb, although duly and legally notified of the commencement, object, general nature and pendency of this action by an order of publication duly published in the 'Lockwood Missourian,' a weekly newspaper regularly printed and published in Dade county, Missouri, for four weeks successively, the last insertion being more than thirty days before the first day of the present term of court, now comes not but

makes default; and this cause coming on to be heard and all and singular the matters herein being seen, heard and fully understood, the court finds:

"That this is an action for partition, and that it is stated in the plaintiff's petition that the plaintiffs and defendants are the owners of and seized as tenants in common of the following described real estate in Dade county, Missouri, to-wit: The northeast quarter of the southwest quarter and the north half of the southeast quarter of the southwest quarter of section 26 in township 30 of range 28, and the northeast quarter of the northeast quarter of the southeast quarter of section 33 in township 30 of range 27, and that the five persons named as parties to this action are each entitled to an undivided one-fifth of said land; and it is also alleged in the petition that the defendant Ara E. McCaleb since the ......day of ........, 1872, has enjoyed exclusively the rents and profits of said premises.

"The court from the evidence further finds that the defendant Ara E. McCaleb is the owner in fee of the above-described real estate, and that plaintiffs Kate Miller and Lydia A. Forrest and the defendants Samuel A. McCaleb and Clarence A. McCaleb have no right, title or interest in said land, or the rents and profits thereof, and that the plaintiff's petition ought to be dismissed at their cost.

"It is therefore considered, adjudged and decreed by the court that the defendant Ara E. McCaleb is the owner in fee simple of the said above-described real estate, and that the said Kate Miller, Lydia A. Forrest, Samuel A. McCaleb and Clarence A. McCaleb, the other parties to this action, have no right, title or interest therein, and that the plaintiff's petition be dismissed, and that the plaintiffs pay the costs of this action, and that execution issue therefor."

We quote these matters fully for the reason that

great stress is placed upon them in the briefs of plaintiff.

The foregoing sufficiently states the case, except that the evidence may be noticed more in detail later.

I.    The first proposition urged for a reversal of this case is the refusal of the trial court to make and file findings of fact separate from the conclusions of law.    This question is vehemently pressed.    The statute upon the subject is Revised Statutes 1899, section 695, and reads:    "Upon the trial of a question of fact by the court, it shall not be necessary for the court to state its finding, except generally, unless one of the parties thereto request it with the view of excepting to the decision of the court upon the questions of law or equity arising in the case, in which case, the court shall state in writing the conclusions of facts found separately from the conclusions of law."

This statute was borrowed from Kansas, and MAC-FARLANE, J., in Blount v. Spratt, 113 Mo. 1. c. 53, thus describes its origin, history and effect upon our practice:

"This section was first incorporated into our code in the revision of 1889, and has never been the subject of consideration by this court.    It was borrowed almost literally from section 2135 of the code of procedure of Kansas (Revised Statutes, 1889) and the practice authorized has often been approved by the Supreme Court of that State, and has been applied in the trial of cases, both at law and in equity, though the section of the Kansas law makes no provision in express terms for taking exceptions to the decisions of the court upon questions of equity arising in the case, as is provided by the section of our code in question.    The Supreme Court of Kansas, as we understand its decisions, not only applies the provisions of the section to the practice in equity cases, 'but will not disturb the finding if there is sufficient evidence to justify it; and this is

the case, though the finding of the court is contrary to the judgment of the appellate court.' [Beaubien v. Hindman, 37 Kan. 228; Weil & Co. v. Eckard, 37 Kan. 696.]

"Under the practice in this State equity cases have been practically triable *de novo* in the appellate court. This court, while deferring somewhat to the conclusions of fact reached by the trial courts, has not been bound by its findings of fact nor its conclusions of law thereon, but has exercised a supervisory control over both. In order that the evidence in cases of eqiutable jurisdiction may be reviewed upon appeal, the rules of this court require that the whole of the evidence shall be embodied in the bill of exceptions. [McElroy v. Maxwell, 101 Mo. 294; Benne v. Schnecko, 100 Mo. 250; Rule 7 of practice in this court.]

"It is now insisted by respondent that as defendant, who is appellant here, has failed to embody all the evidence in the bill of exceptions, in compliance with the rules of court, his appeal should be dismissed or the judgment affirmed.

"We do not think it was the intention of the Legislature, by adding this section to the code of procedure, to abrogate the practice of this court so long followed of supervising the findings of the trial courts in equity cases. If the evidence was before us on proper exceptions, we could review it and determine for ourselves the correctness of the findings."

And in discussing this statute, in case of Gaines & Co. v. Whyte Grocery Co., 107 Mo. App. 1. c. 532, SMITH, P. J., aptly said:

"The defendant's final contention is, that the trial court erred in its refusal to make special finding of the facts and conclusions of law thereon. The statute (section 695) doubtless applies to both legal and equitable actions, but while this is so, we do not think the failure to make a special finding in an action of

the latter kind constitutes a reversible error, because the supervisory courts are authorized on appeal to try and determine such actions upon the pleadings and evidence *de novo*.     The findings of the trial court, if any, may be entirely disregarded by the former tribunal and such findings and decree entered therein as seem to it to be meet and proper.     The Legislature did not, by the enactment of the statute already referred to, intend to abrogate the well and long established practice of the appellate courts in supervising the findings of trial courts in equity cases, or to deprive the former of the jurisdiction to determine for themselves the correctness of the findings of the latter.     [Blount v. Spratt, 113 Mo. 48; McElroy v. Maxwell, 101 Mo. 294; Benne v. Schnecko, 100 Mo. 250.] If the supervisory courts are not bound by the findings of the trial courts, or their conclusions of law in equity cases, but may review the whole evidence and determine for themselves what the findings of facts and conclusions of law should be, it is difficult to see how a party could be prejudiced by the failure of the trial court to make special findings of fact in such cases.

"The failure, therefore, of the court in the present case to make special finding of facts was not such an error as requires a reversal of the decree; and especially so, since it was, as we think, clearly for the right party, and the only one that could have been given in the cause."

This statute has been subsequently discussed in very recent equity cases.     In Fitzpatrick v. Weber, 168 Mo. 1. c. 572, MARSHALL, J., speaking for the court, said:

"And if the circuit court had found any fact that would give support to such conclusion, this court would not have been bound by that finding, and would review the evidence and render the proper judgment in the case notwithstanding the judgment or the find-

ing of facts by the trial court, because this is a proceeding in equity, and section 695, Revised Statutes 1899, requiring the trial court to make a separate finding of facts, was not intended to have and did not have any effect upon the power or duty of this court in equity cases." Approving and to the same effect is the language of LAMM, J., in Shaffer v. Detie, 191 Mo. 1. c. 387.

In the more recent case of Patterson v. Patterson, 200 Mo. 335, all of the cases above cited are approved and the force of the rule of this court in equity cases, minutely and fully discussed by Judge VALLIANT.    In the Patterson case there was a finding of facts, which finding the clerk had copied into the judgment. Upon the finding of facts it was contended, with much force, that the judgment was erroneous.    This court held, however, that we would not disturb the judgment, although we might determine that the facts found by the chancellor below did not support the judgment. We then held and now hold, that, in equity cases, it is not only the privilege but the duty of this court to examine the evidence and draw our own conclusion of fact as well as of law.    Hence the rule that requires all the evidence in such cases to be laid before us.

Now with these conditions existing in our practice, what harm has resulted to the plaintiffs by reason of the court's failure and refusal to make a special finding of facts, separate from the conclusions of law? The trial court, under the statute, giving the statute its fullest sweep, should have made the findings as requested, but in equity cases no prejudicial error results.    We are in no way bound by such findings.    The judgment we enter here in equity cases is a judgment emanating from the conscience of this court and not one from the conscience of the court *nisi*.    To satisfy that conscience we must and do examine and find the facts for ourselves.    Seeing no reversible error in the

point made, it is accordingly ruled against the plaintiffs.

II.    Plaintiffs claim their interest in this property through the deed which we have set out in full. Defendant says that such a deed was never delivered to her or any of the parties named therein.

The natural order would be to take up the question of delivery first, and if there was delivery, then, we can consider the effect of the deed.    This question will require a little closer review of the facts.    This first deed was practically all in the handwriting of the deceased husband.    The second deed was in the handwriting of the justice of the peace.    Both were written on the same day.    It clearly appears that the first intention of the parties was to deed the land to Mrs. McCaleb.    The endorsement on the back of the first deed was that way, but the name of the grantees, written in by McCaleb, were "Ara E. McCaleb and legal heirs of Ethelbert A. McCaleb."    The justice says that his impression is that the deed was practically written when the parties arrived.    Mrs. McCaleb says that they afterwards concluded to change it and make the deed to both of them.    Such a deed was made and appears in the handwriting of the justice.    This last deed remains there with the family until this lawsuit.    Mrs. McCaleb says that she knew of no other, nor did she know of the record of another. Evidently, so far as this evidence shows, there was no delivery to her of this first deed and no consent by her as to its record.    Nor is there evidence of a delivery to any heirs of Ethelbert McCaleb, except the presumption raised by the record of the deed.    There is evidence from the plaintiffs that the McCalebs were constantly quarreling over the money received by the wife from her father's and mother's estate.    The evidence does not clearly disclose from what source the original of this first deed came, except that Mrs. Mc-

Caleb was told of it by the administrator of her husband's estate.    She says that this is her first knowledge of its existence in the form it now stands.    Her attorneys put it in evidence.    Nor does the record show just how the last deed was kept at the home for these thirty-two years, but she says that it was there and that she thought it was their title to the land and she produces the deed at the trial.    It must further be borne in mind that the express consideration in the deeds was six hundred and thirty dollars, and on the same day the grantor, Dry, took back a mortgage for $430, so that evidently he was paid only $200 on the deal.    Now this mortgage is signed by both McCaleb and wife, but the grantor therein is named thus:    "Ara E. McCaleb, wife of Ethelbert A. McCaleb  .  .  .  of the first part."    This would indicate that Dry thought that the title was in Mrs. McCaleb and yet it would further indicate that he knew nothing of the heirs of Ethelbert McCaleb having any interest.    He would hardly be taking a mortgage back for more than two-thirds of the purchase money, knowing that Mrs. McCaleb had only a one-fifth interest at most.    On the other hand if the mortgage was made after the second deed, it would seem that both of the McCalebs would have been made grantors.    This circumstance lends little light as to what deed Dry intended to deliver, but it does lend much light upon the question as to how he understood the first deed to read.    If it be said that he took the mortgage in response to the first deed, thus it clearly shows that he had no idea of having granted any land to these plaintiffs or to any heirs of Ethelbert McCaleb.    On the other hand he might have thought that, inasmuch as the name of Mrs. McCaleb appeared first in the second deed and both of them signed the mortgage, his security was good.    The only clear fact that we can draw from

the circumstance is that Dry, the grantor, evidently did not intend to deed and did not think he had deeded property to the heirs of McCaleb.

There would be more in the circumstance that McCaleb said the land belonged to his wife.    But this is weakened by the fact that McCaleb had placed of record a deed giving her but little interest therein, if the deed is valid as to his heirs.    He might have made a mistake and recorded the wrong deed, and when making this statement might have thought that the second deed was the one of record.    So this fragment of testimony, whilst valuable upon other aspects of the case, is of but little value upon the question of which deed was actually delivered and accepted by the grantee Ara E. McCaleb.

So that, after all, we can only take these circumstances in connection with the testimony of Mrs. McCaleb to determine this matter.

There can be no delivery of a deed, when the grantee is an adult, without an acceptance by the grantee.    In 13 Cyc. 570, the doctrine is thus tersely stated:    "It is essential to the validity of a deed that there should be an acceptance of the instrument by the grantee.    But delivery of a deed implies its acceptance by the grantee, in the absence of fraud, artifice or imposition."

Nor does the recording of a deed to such a person constitute a delivery without such acceptance.    The law on this proposition is summarized in 13 Cyc. 571, in this way:    "The recording of a deed will not of itself constitute a delivery to the grantee in the absence of an acceptance by him of the instrument; but if subsequently accepted the deed will be valid.    The same rule applies to the delivery of a deed for record."

In the case of Stallings, Trustee v. Newton, 110 Ga. 875, the syllabus, which summarizes the context of the opinion, reads:

"1.   Delivery of a deed conveying real property is essential to its validity, and is only complete when the deed is accepted.

"2.   A proper and legal registry of an instrument raises a presumption of delivery, sufficient to establish the fact, unless rebutted.     An unauthorized registry raises no such presumption, and in that case the validity of the instrument is not established until delivery is affirmatively shown."

In Meigs v. Dexter, 172 Mass. 1. c. 218, KNOWLTON, J., said:   "We are of the opinion that the instruction was erroneous in omitting to embody the requirement that there should be an acceptance of the deed by some one representing the grantee.     It is well settled in this Commonwealth that the delivery of a deed is not complete and effectual without an acceptance by the grantee, or by some one authorized to represent him, or who assumes to represent him, and whose act of acceptance is afterwards ratified.     [Hawkes v. Pike, 105 Mass. 560; Commonwealth v. Cutler, 153 Mass. 252; Barnes v. Barnes, 161 Mass. 381.]"

In Moore v. Flynn, 135 Ill. 1. c. 79, that court speaks as follows:   "To render a deed operative to pass title there must be not only a delivery of the deed by the grantor, but also an acceptance thereof by the grantee.     The acceptance of the conveyance by the grantee is as essential as the delivery by the grantor, and where the acceptance is not proven, and the facts do not justify the presumption of law that the grantee has accepted, the title does not pass.   [5 Am. and Eng. Ency. Law, 446, and cases cited; Wiggins v. Lusk, 12 Ill. 132; Kingsbury v. Burnside, 58 Id. 310; Dale v. Lincoln, 62 Id. 22.]     In respect to a grantee who is not under legal disability, the rule is, that when such grantee is aware of the conveyance, and does not dissent, and the conveyance is positively beneficial to him or her, acceptances will be presumed, but that no

presumption will arise so long as the grantee is igno-
rant of the conveyance. [5 Am. and Eng. Ency. Law,
444, and authorities there cited.]''

And again, the Indiana Supreme Court, through
ELLIOTT, J., in Bremmerman v. Jennings, 101 Ind. 1.
c. 256, says: ''The act of Sturdevant in placing the
deed to Joseph L. Jennings on record worked no es-
toppel in favor of the appellants.    That act did, it is
true, make a *prima-facie* case in their favor upon the
question of delivery, but it did no more, and this *prima-
facie* case was explained by the evidence.    It is essen-
tial to the delivery of a deed that there should be an
acceptance by the grantee; a delivery does, indeed, im-
port an acceptance, and the evidence here shows no ac-
ceptance.    It cannot be presumed that  Joseph  L.
Jennings accepted the deed and thus divested the prior
rights of his wife, and we know of no rule that will
permit his creditors to insist that he shall treat the
delivery as valid, to her prejudice and their gain.''

Our own court, in Hall v. Hall, 107 Mo. 1. c. 107,
has announced the doctrine thus:    ''To operate as a
complete and effectual conveyance of land, a delivery
of the deed, actual or constructive, by the grantor and
an acceptance by the grantee, or by some one for him,
are essential requisites. These are the final and crown-
ing acts in the conveyance, without which all other
formalities are ineffectual.    The grantor must part
with the deed and all right of dominion over it, in-
tending that it shall operate as a conveyance, and the
grantee must accept it.''    This case has been since
followed in several cases.

From the positive evidence in this record it is
clear that Mrs. McCaleb never accepted the deed placed
of record; that she never authorized its record, and
knew nothing about it being placed of record; that
during all this time she was relying, as she had a right
to rely, upon the deed, the possession of which she

had, and which created an estate in her much more valuable than the other deed if it is to be given the construction contended for by plaintiffs.   We are not advised upon what theory the chancellor below found for her, but in our judgment there was no acceptance by her of the deed which was of record, and if not, it is no deed for want of delivery.   She would there-fore hold under the second deed.   This obviates fur-ther discussion of points made.   The judgment below is right and will be affirmed.

All concur.